# ADC Fairways Corporation

## v.

# Johnmark Construction, Inc.

Record No. 821067

April 25, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Gordon, Retired Justice.

*Roger E. Warin (Robert E. McLaughlin; Jeffrey P. Moran; Elizabeth A. Noyes-Palmer; Felice Busto; Steptoe & Johnson,* on briefs), for appellant.
*Gary A. Reese (Patterson and Reese,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This is a contract dispute. ADC Fairways Corporation was a real estate development company engaged in the business of rehabilitating apartment buildings and converting them for sale as condominiums. On March 12, 1980, ADC entered into a contract with Johnmark Construction, Inc. for the rehabilitation and conversion of the Ivymount apartments in northern Virginia. This was the second such contract between ADC and Johnmark.

Pursuant to the Ivymount contract, Johnmark agreed to turn over to ADC approximately seven rehabilitated units per week beginning April 18, 1980. Johnmark fell behind in its delivery schedule. A dispute arose between the parties as to the cause of

the delay in rehabilitating the Ivymount units. In order to resolve this dispute, the parties, on June 18, 1980, executed a modification of the March 12, 1980 contract. The modified contract brought the parties current in payments and essentially forgave all matters theretofore in dispute.

Under the June 18 modification, Johnmark agreed to rehabilitate and turn over to ADC seven units per week beginning July 3, 1980. On that date, the promised seven units were not ready. An ADC employee, frustrated about the continued delay, directed Johnmark to leave the job; this directive was not authorized by ADC. Johnmark returned to work on July 8 or 9, 1980, having lost approximately two working days. Pursuant to the modified agreement, seven more units, in addition to the seven due on July 3, 1980, were to be turned over to ADC on July 10, 1980. According to ADC, the units were not ready at that time. Ultimately, on July 24, 1980, each party advised the other that they viewed the contract to have been breached. On that day, Johnmark left the job permanently.

Johnmark sued ADC claiming that ADC breached the contract by insisting "upon changing the lighting fixtures, moldings, appliances, etc., after they were installed or ordered, and refused to pay extra for the change or approve the units until the changes had been made;" by instructing its employees " 'to find something wrong with the units' even if there was nothing wrong, and thereby to avoid or delay paying the Plaintiff;" and by "arbitrarily refusing to accept units; delaying payments; making changes; and altering approval procedures."

ADC denied that it breached the contract and asserted, by way of defense, that Johnmark had breached the contract by failing "to perform under the terms of the contracts as modified . . . and pursuant to letter communication of July 24, 1980." ADC also contended that by entering the June 18 modification Johnmark waived "any and all claims, disputes, actions and or causes of action" that Johnmark may have had against ADC prior to June 18, 1980. Finally, ADC claimed that because Johnmark was the breaching party, even if ADC owed monies to Johnmark, ADC was nevertheless entitled to an offset for additional costs to complete the Ivymount project.

The case was tried to the court sitting without a jury. The trial court ruled that ADC was the breaching party. On the issue of breach, the trial court explained in a bench ruling as follows: "I

find that the Plaintiff [Johnmark] did perform under the contract. I find that delays were caused by ADC, going right to the top man, Daly, whose employees would change things and Daly would change that, adding expense to his own business, extra time, and extra work to the Plaintiff."

With regard to the issue of offset, the trial court said two things: First, that because the delays were attributable almost solely to ADC, ADC was not entitled to an offset for costs to complete the project. Second, the court found that ADC failed to prove the amount of the claimed offset.

On appeal, ADC contends the trial court erred in three ways: (1) in finding that Johnmark performed properly under the contract; (2) in awarding lost profits to Johnmark; and (3) in failing to allow ADC an offset for increased interest costs incurred by ADC because of delays in completing the contract. We will discuss the assignments of error in sequence.

## I. *Breach*

### A. *Breach by ADC*

The trial court ruled that Johnmark performed the contract while ADC breached. ADC contends that the situation is the other way around. According to ADC, the essence of the trial court's opinion regarding breach is that ADC continued to make changes in the choice of certain items to be installed in the units and therefore wrongfully delayed Johnmark in the completion of the work. ADC says that pursuant to the contract and the modification, it had a right to call for changes and thus cannot be held liable for breach for doing what it had a right to do. Second, ADC submits that Johnmark cannot rely on any delay caused by ADC unless Johnmark requested in writing an extension of time for the delay caused by ADC. Without such a written request, ADC contends, Johnmark cannot complain of the delay.

The problem with the arguments advanced by ADC is that they do not respond fully to all the grounds upon which the trial court concluded that ADC breached the contract. Consequently, even if we were to rule in favor of ADC on both points, we would still have to affirm the trial court's determination. This is so because the trial court also found that ADC breached by dismissing Johnmark from the job without complying with the terms of the contract and by the actions of ADC inspectors who "purposely"

picked at inconsequential items for the purpose of "delaying payment." Both of these conclusions are supported by credible evidence. Thus, the trial court's determination that ADC breached must be affirmed.

### 2. *Breach by Johnmark*

ADC contends further that even if it breached, so did Johnmark. The importance of this contention appears to be that if Johnmark breached, it cannot recover damages for lost profits.

■ With regard to Johnmark's breach, ADC says Johnmark did not complete the units in a workmanlike manner on the schedule set forth in the contract and that Johnmark failed to submit a written request for extension of time as required by the contract. The first two points have been resolved against ADC by the trial court's ruling that the units were arbitrarily refused and that Johnmark was wrongfully dismissed from the job. To say that Johnmark's work was arbitrarily refused is tantamount to saying that its work was of a quality that it should have been accepted. Thus, ADC's contention that the work was not done in a workmanlike manner must be rejected. Further, to say that the work was arbitrarily rejected and that Johnmark was wrongfully dismissed from the job is tantamount to saying that Johnmark is not responsible for not meeting the construction schedule. Thus, ADC's second point must also be rejected.

■ Next, ADC's contention that Johnmark breached by failing to request in writing an extension of time for delays is untenable. Johnmark was not required to request an extension of time every time there was a delay. Failure to make such a request might have had adverse consequences for Johnmark, but failure to make the request cannot be described as breaching the contract.

We hold that the trial court did not err in finding that Johnmark properly performed under the contract.

### II. *Damages*

The trial court awarded Johnmark damages of $123,412.00 with interest at ten percent per annum. On appeal, ADC does not attack the entire damage award but only that portion attributable to Johnmark's claim for lost profits on the Ivymount project. ADC contends that Johnmark's claim for $47,781.13 in lost profits was speculative and should not have been allowed. We agree.

Johnmark's president, Richard McCarty, described how lost profits were calculated on the work it did not complete because of the dispute with ADC. He said, on direct examination, that the units were to be rehabilitated for a price of $2,562.50 per unit, a figure which he had bid to secure the contract with ADC. He testified further that in his bid he computed "[a]pproximately 15 percent" of the $2,562.50 as profit. He went on to say that the contract called for the completion of 171 units. Thus, profits were calculated by taking 15% of $2,562.50 and multiplying that number by 171.

The court asked whether the profit percentage was in the contract. McCarty replied, "It's not in the agreement, Your Honor. *It's when we bid the job, we figured in the profit.*" (Emphasis added.) While McCarty was on the stand, the following exchange occurred between the court and his counsel:

THE COURT: "Does the contract carry this 15 percent profit provision in it somewhere?"

COUNSEL: "Oh, no, I don't — no, it does not. It doesn't make any provision for guarantee, Your Honor."

THE COURT: "That's what your client testified he *anticipated he would make*; is that it?"

COUNSEL: "That's right. Under the contract, that was his computed profit of 15 percent."

THE COURT: "Not under the contract but for this work, you mean."

COUNSEL: "I understand. That's correct."

(Emphasis added.)

On cross-examination, McCarty admitted that on a previous rehabilitation job for ADC he had calculated profits of 7.5% but made little or no profit "on the basic contract." He further admitted that in making his per unit bid for the Ivymount work he "*estimated* expenses." (Emphasis added.) Yet, he could not recall his estimates and had no documents or records to indicate his per unit expenses at Ivymount. Moreover, McCarty admitted that the receipts and disbursements concerning the Ivymount job were not kept separate from other jobs on which Johnmark was working. At that point, the court asked, "Well, how did you break it out to know what a profit would be at Ivymount?" McCarty responded,

"As I said, Your Honor, we calculated the profits going into the job. We built that into the price that we bid the job at." McCarty also admitted that the cost of materials increased during the contract period.

The trial court ruled that Johnmark was entitled to recover lost profits. In its bench ruling the court simply said, "[R]eference to the papers shows that 141 units remained at Ivymount. Further reference shows that the contracted profit was 15 percent of the contract price. It gives one the Plaintiff's mathematical figure of $47,781.13."

■ Lost profits should not have been awarded in this case. They were completely speculative. The $47,781.13 figure was nothing more than the profit Johnmark hoped to make at the time of the bid. There was no evidence to establish that this is the profit that would have been made had Johnmark completed the project. Indeed, there was evidence from Johnmark's president that on a similar rehabilitation project for the same developer no profit had been made whatever.

We said in *Boggs* v. *Duncan*, 202 Va. 877, 883, 121 S.E.2d 359, 363 (1961), that "It is well settled that damages are recoverable for loss of profits prevented by a breach of contract 'only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.' " (Citations omitted.) That standard was not met in this case. We hold, therefore, that the trial court erred in awarding Johnmark lost profits of $47,781.13.

### III. *Offset*

■ ADC argues that it is entitled to an offset for expenses incurred in completing the Ivymount project after Johnmark left the job. But ADC could only recover an offset if it had not breached. Because the trial court ruled that ADC breached the contract and because we have upheld that ruling, it follows that the trial court did not err in denying ADC's claim of offset.

Moreover, the trial court also denied the offset because ADC failed to prove the amount. This is an independent basis for denying the claim which would bar ADC from recovering on a theory of offset even if ADC had not breached.

## IV. *Conclusion*

For all the foregoing reasons, the judgment of the trial court will be affirmed in part, reversed in part, and modified. We will enter final judgment here upon the modified judgment.

> *Affirmed in part,*
> *reversed in part,*
> *modified,*
> *and final judgment.*