Craig C. ERDMANN, Plaintiff/Appellee,

v.

PREFERRED RESEARCH, INC. OF GEORGIA, Defendant/Appellant.

Craig C. ERDMANN, Plaintiff/Appellant,

v.

PREFERRED RESEARCH, INC. OF GEORGIA, Defendant/Appellee.

Craig C. ERDMANN, Plaintiff/Appellee,

v.

PREFERRED RESEARCH, INC. OF GEORGIA, Defendant/Appellant.

Nos. 87–2618, 87–2622 and 87–2623.

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1988.

Decided July 29, 1988.

Rehearing Denied Aug. 30, 1988.

Joseph M. Spivey, III (Virginia W. Powell, Deborah L. Fletcher, Laura H. Hamilton, Hunton & Williams, Richmond, Va., on brief), for Preferred Research, Inc., of Georgia.

Gerald T. Zerkin (Gerald T. Zerkin & Associates, Richmond, Va., on brief), for Craig C. Erdmann.

Before RUSSELL and WIDENER, Circuit Judges, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

MERHIGE, Senior District Judge:

In the case below, the jury awarded plaintiff damages for breach of licensing contract and tortious interference with business relationships. The district court entered judgment not withstanding the verdict for defendant on the tortious interference claim. Both parties have appealed. For the reasons set forth below, we affirm.

*Background*

Appellant and Cross-Appellee, Preferred Research, Inc. (Preferred) provides title insurance, real estate appraisals and loan closings to lenders in the business of making mortgage loans in six states, including Virginia. Its primary method of operation is to license others who operate title insurance business under the name of Preferred Research.

Appellee and Cross-Appellant, Craig C. Erdmann (Erdmann), a Virginia lawyer, entered into a license agreement with Preferred under date of December 11, 1985. Under this agreement, Erdmann operated under the name Preferred Research of Central Virginia and was authorized to issue title insurance policies as an agent of Preferred. Erdmann was granted an exclusive right to operate in the Richmond, Virginia area for a period of ten years, with the understanding that if the License Agreement was terminated, he would not compete in any capacity with Preferred for a period of one year.

In July of 1986, Preferred sought a modification of the License Agreement with Erdmann by deleting the words "in any capacity" from the non-competition clause.

Erdmann did not sign the suggested modification, although he and the president of Preferred discussed it a number of times. Preferred contends that Erdmann insisted on a reduction of Preferred's appraisal fee called for under the License Agreement, while Erdmann contends his expressed willingness to sign the Modification Agreement was rejected.

On August 20, 1986 Preferred notified Erdmann in writing that he was in breach of the License Agreement because he (1) had refused to execute a modified non-competition agreement; (2) had not secured a fidelity bond as required by the License Agreement; and (3) refused to have his employees execute a non-competition/non-disclosure form in the latest form used by Preferred Research. Erdmann was, pursuant to the terms of the License Agreement, granted a period of seven (7) days in which to cure the alleged breaches in order to avoid termination.

The parties continued to confer to no avail. On October 24, 1986 Preferred terminated Erdmann as a licensee. Erdmann thereafter filed suit seeking monetary damages, declaratory and injunctive relief, as well as counsel fees, in the court below alleging breach of contract, tortious interference in plaintiff's contracts and business prospects, and a violation of the Virginia Retail Franchising Act, Va. Code § 13.1–557 *et seq.*

An amended complaint sought in addition "sums which defendant has refused to pay pursuant to the contract." Preferred in turn filed a counterclaim seeking monetary damages, attorneys fees and injunctive relief.

The jury awarded plaintiff $17,900.27 for work performed prior to the termination of the agreement. The jury also awarded plaintiff $50,000 in compensatory damages for breach of contract, $50,000 in compensatory damages and $200,000 in punitive damages for tortious interference with a business relationship.

The district court entered J.N.O.V. for defendant on the tortious interference claim and directed the verdict for defendant on the franchise claim. As a result, damages were limited to $67,900.27. Plaintiff moved for a compensatory damage award of $100,000 or for a new trial on breach of contract damages. Said motion was denied.

*Discussion*

■ The initial appeal was taken by Preferred asserting three errors below. First, Preferred contends that the Court erred in denying defendant's motion for a directed verdict on the breach of contract claim. Preferred asserts that Erdmann, in refusing to sign the modification to the non-competition agreement and in not obtaining the bond, did not act in good faith, and thus was the first to breach the contract.

Defendant's argument is simply not supported by the facts. Erdmann had no duty whatsoever to modify his contract. It was not a breach of good faith for Erdmann to refuse to modify the rights and obligations to which the parties had agreed.

Similarly, the jury determined that Erdmann's failure to secure a fidelity bond did not entitle Preferred to terminate the licensing agreement and Preferred has not demonstrated that its finding was in error. The licensing agreement provided as follows:

> Licensee agrees to maintain at all times bond coverage in a form satisfactory to Preferred Research, Inc., as to Licensee's fidelity and as to employee fidelity of each and every officer and employee

of Licensee in an amount of not less than One Hundred Thousand Dollars ($100,-000.00), and shall furnish to Preferred Research, Inc., a true copy thereof and satisfactory evidence of the continuing status of such coverage.

Testimony at trial, however, indicated that Preferred rarely enforced this provision and Erdmann was so informed. When Erdmann eventually sought to secure the bond, he asked Preferred for a clarification of the meaning of "bond coverage in a form satisfactory to Preferred." He was unable to obtain an explanation sufficiently clear to enable him to secure a bond. Accordingly, the jury's determination is supported by credible evidence. *See ADC Fairways Corp. v. Johnmark Construction, Inc.,* 231 Va. 312, 343 S.E.2d 90, 92 (1986).

■ Second, Preferred contends that the district court should not have permitted the jury to consider lost profits as damages. The court instructed the jury that "[plaintiff] must show sufficient facts and circumstances to permit you to make a reasonable estimate of each item, and if he does not show that, he cannot recover for such item." Preferred concedes that the jury instructions were proper. However, Preferred asserts that, instead of allowing the trier of fact to evaluate the evidence, the court should have ruled that the lost profit evidence was too speculative as a matter of law.

Erdmann operated the business for over nine months prior to the termination of the agreement. He introduced evidence regarding his monthly gross earnings. He further introduced testimony regarding customer satisfaction with the quality of his work. We find that there was sufficient evidence to submit the issue to the jury.

■ Third, Preferred contends that it was improper for the jury to award the entire amount charged for work conducted prior to the termination because Preferred was entitled to appraisal fees and chargebacks.

The parties stipulated that, following the termination, certain customers of Erdmann

did not pay within ninety days. This receivables account, labeled chargebacks, amounted to $1,399.56. Furthermore, Preferred expended $1,375 in appraisal fees after Erdmann's termination on his contracts. Preferred contends that these amounts should have been deducted from the amount awarded in back pay.

The record reveals that Preferred did not sustain its burden on this issue. This Court cannot say that Erdmann was inevitably liable for these charges. For example, some overdue accounts may have eventually been paid. Consequently, the Court will not impose these charges on appeal.

■ Erdmann has cross-appealed on four grounds. First, he claims the Court erred in granting J.N.O.V. to defendant on the tortious interference with business claim. The district court found the tort claim indistinguishable from the contract claim so that the tort claim could not be independently maintained.

Under Virginia law, a tort claim normally cannot be maintained in conjunction with a breach of contract claim. *A & E Supply Co. v. Nationwide Mutual Fire Ins.,* 798 F.2d 669, 671–72 (4th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987); *Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 518 (1983). An exception arises where a party establishes an independent, willful tort "that is factually bound to the contractual breach but whose legal elements are distinct from it." *A & E Supply Co.,* 798 F.2d at 672. It is not sufficient for plaintiff to show that defendant willfully desired to breach the contract for its own benefit. *Kamlar Corp.,* 299 S.E.2d at 518 n. 2. Instead, plaintiff must show that defendant maliciously desired to injure plaintiff. *Id.*

The district court correctly found that the requisite showing had not been made. Defendant was motivated merely by its own self-interest in protecting its business relationships. The termination of the License Agreement effectively severed Erdmann's business relationships. Preferred's subsequent actions did not give rise to an independent tort. As the district court found, the alleged tort was really just "a classical breach of contract claim."

■ Second, Erdmann contends that the Court erred in dismissing the claim brought under the Virginia Franchise Act. The district court found that Erdmann's business was not a franchise.

The Retail Franchising Act defines franchise as follows:

"Franchise" means a written contract or agreement, whether or not a franchise fee is required, between two or more persons, by which:

(1) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services at retail under a marketing plan or system prescribed in substantial part by a franchisor; and

(2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate.

Va. Code § 13.1–559(b).

To find that Erdmann's relationship with Preferred falls within this section would be to strain the language of the statute. Black's Law Dictionary defines "retail" as "a sale for final consumption ... a sale to the ultimate consumer." Black's Law Dictionary (5th Ed.1979). Erdmann's title insurance service did not fall within this definition. His services were performed for professional mortgage lenders and attorneys. Such professionals were not ultimate consumers of a retail sale, but, rather, passed such services on, in some form, to the purchasers of the property.

Third, Erdmann contends that, after the court entered J.N.O.V. on the tortious interference claim, it should have amended or granted a new trial on the compensatory damage award for breach of contract. He asserts that he is entitled to the $50,000 in compensatory damages awarded on the tort claim. The district court found that the $50,000 awarded for each of the two claims were duplicative. As we agree with that conclusion, the district court did not

err in limiting damages to that which was awarded on the contract claim.

■ Finally, Erdmann asserts that the district court erred in denying his motion to compel discovery of billing records of other licensees. The scope and conduct of discovery, however, are within the sound discretion of the district court. *Lewis v. Bloomsburg Mills, Inc.,* 608 F.2d 971, 973 (4th Cir.1979). Erdmann has failed to demonstrate an abuse of that discretion.

Accordingly, the judgment of the district court is

AFFIRMED.