James **JOYCE,** Plaintiff,

v.

**LINCOLN NATIONAL LIFE IN-SURANCE CO.** and Market-ing Group, Defendants.

Civ. A. No. 93–475–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 5, 1993.

Martin Moss Zoltick, Oblon, Spivak, McCelland, Maier & Neustadt, Arlington, VA, Keith Glen Swirsky, Galland, Kharasch, Morse & Garfinkle, Washington, DC, for plaintiff.

William J. Bethune, Marsh, Fleischer & Quiggle, Bethesda, MD, for defendants.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court on defendants' Motion for Summary Judgment. Plaintiff, James Joyce, is an insurance agent who brought this breach of contract action against the defendants, an insurance company and its broker, for damages Joyce allegedly incurred for defendants' negligence, negligent misrepresentation, tortious interference with the agent's prospective business advantage, and breach of the covenant of good faith and fair dealing.

On November 10, 1992, Asbury Methodist Village ("Asbury"), a retirement community in Gaithersburg, Maryland, contacted the plaintiff. Asbury requested Joyce to propose group health, dental, and life insurance plans for Asbury's employees, and told Joyce that it needed to change its current plans immediately. Later that day, Joyce contacted Benefits for the purpose of obtaining group health rate quotes for the Asbury case from Lincoln. Benefits stated that because the group size for the Asbury case exceeded 150, the rate quote would have to be approved by Lincoln's underwriters.

On November 12, 1992, Benefits called Joyce and quoted rates for the Asbury case. Based upon past experience with Benefits, customary industry practice, and Benefits' specific statement on November 10, Joyce believed that the rates quoted by Benefits had been approved by Lincoln's underwriters. Joyce then put together a written proposal, which included the Lincoln rates on group life insurance. After receiving the written proposal, Asbury contacted Joyce and asked him to seek an additional five percent off of the quoted rates from Lincoln. Benefits told Joyce that an additional five percent could be taken off of the quoted rates.

Later that day, Joyce presented a new proposal to the Asbury Board of Directors, which was then accepted. That same day, Benefits told Joyce that "there may be a problem," and that the Asbury plan was a "no go." Asbury, after learning of the problem, set a deadline of 12:00 noon the following day to have the problem clarified, after which time it would go with an alternate proposal. Ultimately, neither Benefits nor Lincoln clarified the problem by the extended deadline of 1:00, November 17th. The case was not approved until 5:00 that day, by which time Asbury had committed to go with an alternate plan.

The parties' relationship arises out of and is governed by the Producer Contract between them. Yet Joyce does not claim breach of any express provision of that contract. Instead, his amended complaint purports to state counts in negligence (Count I), negligent misrepresentation (Count II), and tortious interference with prospective business advantage (Count III). The only contract claim is Count IV, breach of implied covenant in good faith and fair dealing.

■ Under Virginia law, tort claim cannot normally be maintained in conjunction with a contract action. *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 791 (4th Cir.1988). The exception, recognized in *Erdmann*, for a willful and malicious breach that amounts to a tort independent of the contract, is not pleaded here. The closest Joyce comes to pleading willful malice is his claim of recklessness. In addition, the facts of this case would not support any contention of malice or bad faith. The record in this case makes clear that Benefits personnel were motivated not by an intent to injure Joyce but by a desire to assist him in securing Asbury's business. Benefit's failure to obtain initial home office approval was unfortunate, but falls short of any actionable claim.

■ Joyce's claim of negligent misrepresentation must also fail. Virginia does not recognize any tort of negligent misrepresentation. *Haigh v. Matsushita Elec. Corp.*, 676 F.Supp. 1332, 1349–50 (E.D.Va.1987). While Maryland may recognize the tort, there is no evidence in this case of any negligent misrep-

resentation on the part of the defendants. At best, defendants made a mistake.

■ Joyce's sole contract claim must also fail, as the Virginia Supreme Court has yet to recognize any cause of action for breach of implied covenant. *L & E Corp. v. Days Inns of America, Inc.*, 992 F.2d 55, n. 2 (4th Cir.1993). Moreover, Joyce does not allege bad faith, dishonesty, malice, wrongful intent, or any other conduct generally considered actionable in other jurisdictions for breach of implied covenant.

Here, not only does the Producer Contract between Joyce and Lincoln not impose any duty on Lincoln to respond to Joyce's proposal requests, it expressly permits Lincoln ( & Joyce) to cancel the contract at any time, and it permits Lincoln to withdraw territories and product lines from Joyce. Nothing in the contract obligates Lincoln for commissions which might have been earned by other carriers. To permit Joyce to recover damages measured by claimed lost commissions would be to award commissions contrary to the express terms of the parties' contract. The Court finds that defendants owed no duty independent of what was contained in the express terms of the contract.

■ In order for Joyce to prevail, he must show that, but for defendants' alleged failure to furnish the requested premium quote as and when requested, he must successfully have placed the Asbury business and earned the claimed commissions. Joyce cannot contend that, had Lincoln refused to quote or had it delayed issuance, he would have placed coverage elsewhere. Although he considered seeking a number of competing proposals, and he went so far as to contact several carriers in addition to Lincoln, he was unable to obtain a single, competitive medical quote from any other company. In short, Lincoln provided Joyce his only real opportunity to bid on Asbury's business.

Under Virginia law, anticipated profits from a new business or venture, or one merely in contemplation, are too speculative to recover as an element of damages. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 529 (4th Cir.1987); *see also Mullen v. Brantley*, 213 Va. 765, 195 S.E.2d 696, 699–700 (1973) (denying franchise operator who ran number of pizza franchises to recover damages for inability to open additional franchises in area).

Joyce relies on *Lifmann v. Carlson Co.*, 867 F.2d 609 (4th Cir.1989), for the general proposition that future commissions may, in appropriate circumstances, constitute an element of damages. *Lifmann* can be distinguished from this case, however, because the claim in *Lifmann* was based on continuation of an established business and established earning capacity. Moreover, the defendant's own witness in *Lifmann* testified that the plaintiff was "clearly" capable of earning the disputed commissions. Here, in contrast, Joyce's claim depends on proof not of Joyce's earning capacity in general but on the likelihood that a single, specific relationship between Joyce and Asbury would have been established and would have continued—a matter of pure conjecture.

In this case, Joyce's damages, even for claimed first-year commissions and certainly for commissions in later years, are highly speculative. They would depend on a number of uncertain factors, including Asbury's own continuing business success; Asbury's desire and ability to provide group insurance for its employees at the same or higher benefit levels; the continued absence of more attractive or less costly insurance products; an on-going relationship between Asbury and Joyce; and on-going relationships between Joyce and insurers with whom Asbury desired to do business. None of these factors can be proved or assumed. Joyce cannot even show how many employees, if any, would have enrolled at the outset. Without knowing who would have enrolled and without knowing enrollees' health, no one can foresee the results of Lincoln's further underwriting.

Grants of summary judgment motions are warranted if the pleadings, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving will prevail as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is a genuine issue as to a material fact only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The

Court finds that this case is appropriate for summary judgment, as there exists no genuine issue as to any material fact. Under the contract, defendants were not ever obligated to provide a quote to Joyce, much less within a specified time period.

An appropriate order shall issue.

### ORDER

For reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that defendants' Motion for Summary Judgment is GRANTED.