# CIRCUIT COURT OF THE CITY OF RICHMOND

Maximus, Inc.

v.

Lockheed Information Management
Systems Co., Inc., et al.

## Case No. LA-2356-4

BY JUDGE RANDALL G. JOHNSON

### October 7, 1998

This case is before the court on several post-trial motions. Defendants, Lockheed Information Management Systems Company, Inc., (Lockheed) and the Center for the Support of Families (the Center), have filed motions to strike plaintiff's evidence, to set aside the jury's verdict, and for a mistrial. Plaintiff, Maximus, Inc., asks the court to treble the jury's award of damages and for costs and attorney's fees under Va. Code § 18.2-500.

In November 1994, the Virginia Department of Social Services (DSS) initiated a procurement action pursuant to the Virginia Public Procurement Act, Va. Code §§ 11-35 *et seq.*, to "privatize" two child support enforcement offices in Northern Virginia. Maximus and Lockheed were the only bidders. On April 13, 1995, after the appointment of a selection panel and evaluation of the bids, DSS issued a Notice of Intent to award the contract to Maximus. On April 25, 1995, pursuant to Va. Code § 11-66, Lockheed filed a formal protest of DSS' decision to award the contract to Maximus. While the protest contained a variety of allegations, the principal complaint was that two

members of the evaluation committee had undisclosed conflicts of interests that interfered with their objectivity and compromised the integrity of the evaluation process. After an investigation, the Notice of Intent was cancelled and the contract was later awarded to Lockheed.

On February 5, 1996, Maximus filed this action against Lockheed and the Center. In its motion for judgment, Maximus alleged that Lockheed had tortiously interfered with its contract expectancy with DSS. Maximus claimed that Lockheed knew or should have known that the allegations contained in the protest were false, that the false allegations were intentionally and selectively presented to create an appearance of impropriety, and that the protest was calculated to wrongfully interfere with Maximus' expected contract with DSS so that DSS would cancel the Notice of Intent and award the contract to Lockheed. Maximus also alleged that Lockheed, the Center, which was to be Lockheed's subcontractor if Lockheed was awarded the contract, and an employee of the Center engaged in a conspiracy to injure Maximus' reputation and business in violation of Va. Code §§ 18.2-499 and 18.2-500. The employee was later nonsuited.

The first trial was held in September 1996. After the presentation of plaintiff's evidence, the court granted defendants' motion to strike. Basically, the court held that Lockheed had a qualified privilege to file its protest and that Maximus was required to prove malice or other egregious conduct in order to get the case to the jury. The court concluded that Maximus had not carried its burden. On appeal, the Supreme Court held that this court applied the wrong legal standard. The Supreme Court said that in order to establish a prima facie cause of action for tortious interference, Maximus had to show that:

(1) [I]t had a contract expectancy; (2) Lockheed knew of the expectancy; (3) Lockheed intentionally interfered with the expectancy; (4) Lockheed used improper methods to interfere with the expectancy; and (5) Maximus suffered a loss as a result of Lockheed's disruption of the contract expectancy.

254 Va. 408, 414, 493 S.E.2d 375 (1997).

Noting that this court in sustaining the motion to strike had found that "if this were the end of the case" there was enough evidence to submit to the jury the issue of "whether the conduct of the defendants was improper," *id.*, the Supreme Court reversed. The second trial took place in July of this year. The jury returned a verdict in favor of Maximus for $1,500,000 on its tortious interference claim against Lockheed, and for $3,000,000 on its conspiracy

claim against both defendants. It is that verdict which is now before the court. Each of the motions will be considered separately.

## I. *Motion to Strike Plaintiff's Evidence*

Defendants' motion to strike is based on four main arguments. First, defendants argue that they had a statutory right to file the protest and that Maximus failed to prove that any improper means were used in connection with the protest. Second, defendants argue that Maximus failed to prove that Lockheed's protest was a proximate cause of the cancellation of the Notice of Intent. Third, defendants argue that Maximus failed to prove a conspiracy. And fourth, defendants argue that Maximus' proof of damages was not legally sufficient.

Defendants' first three arguments can be disposed of quickly. With regard to Lockheed's statutory right to file a protest, the court is well aware of it. In fact, the court agreed with defendants at the first trial that Lockheed's statutory right to protest was so strong that it created a qualified privilege that Maximus could overcome only by showing malice or some other egregious conduct on the part of Lockheed. That is why Maximus' evidence was struck. The Supreme Court, however, did not agree with defendants. The Supreme Court held that even in the face of Lockheed's statutory right to protest, Lockheed could not interfere with Maximus' contract expectancy by improper — not malicious or egregious — but improper means. Such improper means, said the Court, do not have to be tortious or illegal themselves and include such things as unfair competition and unethical conduct. Indeed, the factual record that was before the Supreme Court when it reversed this court is different from the present factual record only in that defendants' evidence has now been presented. Maximus' evidence is essentially the same. Since the Supreme Court held Maximus' evidence of improper means to be sufficient to survive defendants' motion to strike, the presentation of defendants' evidence does nothing more than create a jury issue. Defendants' motion to strike Maximus' evidence on the issue of tortious interference cannot be sustained.

The court also cannot sustain defendants' motion to strike Maximus' evidence on the issue of proximate cause. While defendants argue that it was DSS' independent investigation that led to the Notice of Intent being cancelled, DSS' Division of Child Support Enforcement's director, Michael Henry, testified unequivocally that he was convinced that Lockheed would litigate the award to Maximus and that he was afraid of a "public spectacle." In light of that, according to Henry, it was an "easy call" to cancel the Notice of Intent. Since Henry was one of the people responsible for making the

decision whether or not to cancel the award, the jury clearly had sufficient evidence to find proximate cause.

Defendants' third argument in support of their motion to strike involves Maximus' conspiracy claim. That argument is also rejected. In *Commercial Business Systems v. BellSouth*, 249 Va. 39, 453 S.E.2d 261 (1995), the Supreme Court held that in order to prove a conspiracy under Va. Code §§ 18.2-499 and 18.2-500, a plaintiff must prove that the defendants acted intentionally, purposefully, and without legal justification. 249 Va. 47. Here, there was evidence that Robyn Large, within the scope of her employment with the Center, submitted an affidavit in support of Lockheed's protest and that she knew why she was submitting the affidavit. There was also evidence that she knew what Lockheed was attempting to accomplish by filing the protest and that she knew that she and the Center stood to gain if the protest was successful. Thus, it is clear that Robyn Large's act of submitting the affidavit was intentional and purposeful, and having found that Lockheed's protest constituted an improper interference with Maximus' contract expectancy, the jury had every right to find that her act was without legal justification as well. That finding will not be disturbed.

Defendants' final argument in support of their motion to strike has more substance. It involves Maximus' claim for damages and is based on two grounds. First, defendants claim that since Maximus had never been involved in a contract in Virginia like the one at issue here, its damages are too speculative and cannot be allowed. Second, defendants argue that even if some damages are allowed, Maximus cannot recover all of the damages claimed. The court disagrees with defendants' first argument but agrees with the second.

With regard to whether Maximus' damages are impermissibly speculative, defendants rely on Virginia's "new business rule":

> When an established business, with an established earning capacity, is interrupted and there is no other practical way to estimate the damages thereby caused, evidence of the prior and subsequent record of the business has been held admissible to permit an intelligent and probable estimate of damages ... . But where a new business or enterprise is involved, the rule is not applicable for the reason that such a business is a speculative venture, the successful operation of which depends upon future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the measure of damages.

*Mullen v. Brantley*, 213 Va. 765, 768, 195 S.E.2d 696 (1973) (citations omitted); *see also Murray v. Hadid*, 238 Va. 722, 385 S.E.2d 898 (1989); *ADC Fairways Corp. v. Johnmark Construction, Inc.*, 231 Va. 312, 343 S.E.2d 90 (1986); *Boggs v. Duncan*, 202 Va. 877, 121 S.E.2d 359 (1961); *Sinclair Refining Co. v. Hamilton & Dotson*, 164 Va. 203, 105 S.E. 543 (1921); *McDevitt & Street Co. v. Marriott Corp.*, 713 F. Supp. 906 (E.D. Va. 1989).

In fact, in *Mullen v. Brantley* and *McDevitt & Street Co. v. Marriott Corp.*, it was held that even a business which was part of an established national chain could not recover lost profits for a location in which the franchise had never operated. In *Mullen* it was a pizza parlor. In *McDevitt & Street Co.* it was a hotel. Still, the court rejects defendants' argument.

That Virginia recognizes a cause of action for tortious interference with a contract expectancy, if not already firmly established, was made crystal clear by the Supreme Court's reversal in this case already discussed. If the court were to accept defendants' argument on damages, that cause of action, except for established businesses, would be meaningless. In fact, if the court were to accept defendants' argument on damages, it would not only be condoning the wrongful conduct engaged in by these defendants, but encouraging similar conduct by other persons in the future.

Under defendants' argument, either of the bidders on this contract, Maximus or Lockheed, could have lied, cheated, or stolen with complete civil impunity since neither bidder had ever engaged in child support enforcement in Virginia. In fact, anybody anywhere in Virginia could lie, cheat, and steal to deprive any new business, or any existing business that has never operated in Virginia, of a contract expectancy with complete civil impunity. This cannot be the law. Instead, the court holds that in this type of case, where it is the defendant's intentional and purposeful conduct that is directly responsible for the plaintiff's inability to present a less speculative claim for damages, the law is as expressed in *Wood v. Pender-Doxey Grocery Co.*, 151 Va. 706, 144 S.E. 635 (1929):

> There are authorities without number sustaining the view that damages for the breach of a contract must be the logical and natural result of the breach, and must be established with reasonable certainty. We have no disposition to depart from this elementary principle of the law, which is applicable to a great majority of the cases.
>
> There are cases, however, and we think this is one, in which the question of an intentional wrong is involved. In such cases the degree of proof necessary is much relaxed in favor of the injured party.

Where the wrongdoer creates the situation that makes proof of the exact amount of damages difficult, he must realize that in such cases "juries are allowed to act upon probable and inferential, as well as direct and positive, proof."

151 Va. at 713; *see also Chesapeake & Potomac Tel. Co. v. Carless,* 127 Va. 5, 11-12, 102 S.E. 569 (1920).

Since it was the defendants' intentional and purposeful conduct, conduct that the jury found was without legal justification, that is responsible for Maximus' inability to better quantify its damages and since the court must give a remedy for the recognized cause of action of tortious interference with a contract expectancy, the fact that Maximus had never engaged in collecting child support in Virginia cannot be used to deprive it of damages. And since there was evidence from which a reasonable estimate of Maximus' lost profits could be made, including the profit projection made in Maximus' bid and DSS' child support collection history, defendants' motion to strike all of Maximus' evidence on damages is overruled.

Defendants' other argument on damages will prevail. Included in its request for damages, and included in the jury's verdict, were the costs incurred by Maximus in making its initial bid on the contract. As defendants correctly point out, however, those costs would have been incurred by Maximus even if Maximus had been awarded the contract. Having now been awarded the profits which it would have received had the contract been awarded pursuant to the original Notice of Intent, profits which already take into consideration the costs of preparing the bid, Maximus is not entitled to also recover the bid costs. This portion of defendants' motion to strike is sustained.

## II. *Motion to Set Aside the Jury's Verdict*

Defendants' motion to set aside the jury's verdict is also based on several grounds. All of those grounds, however, revolve around the fact that the verdict is for more than Maximus sought, both in its *ad damnum* and in its proof. Defendants argue, in fact, that the verdict is for so much more than the amount of damages proved that it evinces an impermissible bias against the defendants requiring a new trial. While the court agrees that the verdict is for more than is appropriate and will lower it, a new trial is not needed.

In its amended motion for judgment, Maximus sought compensatory damages on its tortious interference claim in the amount of $2,000,000, and punitive damages on the same claim in the amount of $5,000,000. On the conspiracy claim, Maximus sought compensatory damages of $2,000,000. At

trial, Maximus dropped its claim for punitive damages and presented testimony and documentary evidence which claimed total damages of $1,824,914.51. That amount had three components: (1) $1,006,144 in "lost overhead;" (2) $741,124 in lost management fees; and (3) $77,646.51 as the cost to prepare the bid. No evidence of any other damage, such as harm to its reputation, was presented. Since it is clear that Maximus' claimed damages under its tortious interference claim and its conspiracy claim are identical — that is, its claimed damages are $1,824,914.51 under either claim, not $1,824,914.51 under both claims — it can only recover that amount once, even if all of its claimed damages are allowable. All of its claimed damages, however, are not allowable.

Maximus attempts to explain the jury's award by saying that the jury deducted the cost of preparing the bid, made a reduction for the present value of lost profits for the remaining two years of the contract, and rounded the result to $1,500,000. Since the verdict form jointly submitted by the parties required separate verdicts for the tortious interference claim and the conspiracy claim without an instruction that those damages should not be duplicated, the jury awarded that amount on the tortious interference claim against Lockheed and then awarded the same amount against each defendant on the conspiracy count. Whether Maximus' argument is correct, and the court believes that the latter part is correct, makes no difference. Since the evidence of Maximus' damages makes it clear that the jury's verdict cannot stand as it is, but since the evidence is such that the court can easily determine the correct amount to be awarded, a new trial will not be ordered. Instead, the court will reduce the amount of the verdict to exclude those items for which Maximus cannot recover.

The court has already explained why Maximus is not entitled to recover the cost of preparing its bid. The court also finds that Maximus is not entitled to recover what it calls "lost overhead." As explained by its expert, Arthur Nerret, that amount is the percentage of Maximus' general and administrative overhead from all of its operations nationwide that would have been "assigned" for bookkeeping purposes to the DSS contract, not what its overhead would have been on the DSS contract. That overhead, the DSS overhead, was included in other costs. What Maximus is really trying to do is to recover from these defendants overhead costs incurred on contracts other than this one. That is not proper. Whatever the propriety of Maximus' assigning a portion of its national overhead to each job, it is not an appropriate element of damages in this case. Thus, the $1,824,914.51 claimed by Maximus as damages must be reduced by the $77,646.51 it spent to prepare the bid and the $1,006,144 in overhead from other operations, making its real damages in

this case $741,124, which is the management fee projected for this job, and which it lost when it did not get the job. No other real damages are appropriate. To the extent the jury awarded more, its verdict is set aside.

### III. *Motion for a Mistrial*

Defendants' final motion is for a mistrial. This motion is based on the discovery by defendants, after trial, that the copies of Plaintiff's Exhibit 15 given to the jury, which is the exhibit showing Maximus' calculations of its damages, contain yellow highlighting of certain entries. Those entries, however, are simply the items which make up Maximus' claimed damages and which are also contained on the summary sheet at the beginning of the exhibit. While the court admonishes counsel for Maximus that the proper procedure, if it wants to include highlighting in exhibits given to jurors, is to advise opposing counsel and secure permission from the court, the fact that the specific items highlighted here were highlighted and emphasized throughout the case makes the specific highlighting complained of by defendants harmless. Defendants' motion for a mistrial is denied.

### IV. *Maximus' Motion for Treble Damages, Costs, and Attorneys' Fees*

Virginia Code § 18.2-500 provides that "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel ... ." Defendants ask the court to exercise its discretion to refuse to treble the damages awarded by the jury. Maximus argues that the court has no such discretion. The court reluctantly agrees with Maximus.

From the evidence, it is clear that both bidders on DSS' contract, Lockheed and Maximus, engaged in the type of concealment and sharp practices that would make television's J. R. Ewing of "Dallas" fame proud. If the court had discretion not to treble the damages awarded by the jury, and as now reduced by the court, they would not be trebled. The court concludes that it has no such discretion.

The court has found no case in which the mechanism of trebling damages awarded under Va. Code § 18.2-500 is discussed in any detail. In *Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94, 413 S.E.2d 611 (1992), after the jury had awarded $300,000 on a conspiracy count, the court "entered judgment on the conspiracy verdict [and] trebled the damages to $900,000 as provided in Code

§ 18.2-500(a) ... ." That part of the trial court's action was affirmed but not discussed. Similarly, in *Marina Shores, Ltd. v. Cohn-Phillips, Ltd.*, 246 Va. 222, 435 S.E.2d 136 (1993), the jury awarded a variety of damages, including "$400,000 compensatory damages, trebled by statute to $1.2 million." 246 Va. at 224. Though reversed on other grounds, no mention was made by the Supreme Court of whether it was appropriate for the jury, as opposed to the court, to award treble damages.

In yet another case involving Va. Code § 18.2-500, the trial court awarded treble damages in equity. *Advanced Marine Enterprises, Inc. v. PRC Inc.*, 256 Va. 106 (1998). In that case, too, there is no discussion explaining under what circumstances damages should or should not be trebled. The court concludes that the plain language of the statute — that a victim of a conspiracy "may sue therefor and recover three-fold the damages by him sustained" — means that when the fact-finder determines that an unlawful conspiracy has occurred and that damages resulted from the conspiracy, whatever damages are awarded must be trebled. They will be trebled here. Accordingly, the $741,124 previously discussed will be trebled to $2,223,372.

Finally, the statute requires the court to award Maximus its costs and reasonable attorneys' fees. Counsel are directed to consult with each other and to schedule a hearing for the presentation of evidence on those items.

December 3, 1998

This case involves a dispute between the plaintiff, Maximus, Inc., and the defendants, Lockheed Information Management Systems, Inc., and the Center for the Support of Families, over a public procurement action initiated by the Virginia Department of Social Services. After a three-day trial, a jury determined that Lockheed had tortiously interfered with plaintiff's contract expectancy with DDS and that Lockheed and the Center had engaged in a conspiracy to injure Maximus' reputation and business. The jury's verdict was for $1,500,000 against Lockheed for tortious interference and for $3,000,000 against both defendants for conspiracy. In a letter opinion dated October 7, 1998, the court held that the verdict would be reduced to $741,124, which the court concluded were the actual damages suffered by Lockheed, but that the reduced amount would be trebled to $2,223,372 in compliance with Va. Code § 18.2-500. The case is now before the court on defendants' motion for reconsideration of the court's ruling on treble damages and on Maximus' motion for attorneys' fees and costs under § 18.2-500.

With regard to defendants' motion for reconsideration, the motion is denied. The court adheres to the holding set out in its letter of October 7.

With regard to Maximus' motion for attorneys' fees and costs, Va. Code § 18.2-500 provides, in part:

> (a) Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499 [conspiracy], may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel; and without limiting the generality of the term, "damages" shall include loss of profits. Such counsel shall in no case receive any other, further or additional compensation except that allowed by the court and any contract to the contrary shall be null and void.

Maximus' lawyers have submitted a request for attorneys' fees totaling $347,875, and a request for costs totaling $1,372.02. Defendants, while not contesting the time Maximus' lawyers spent on the case or the reasonableness of the hourly rates they claim, argue that Maximus' fee and cost request should be denied or that the court should award less than the full amounts requested. Defendants' opposition to Maximus' fee and cost request is based on several grounds. In the order set out in their memorandum in opposition to the request, they are: First, that since attorneys' fees and costs are only allowable under Maximus' conspiracy claim, a reduction in fees must be made for efforts expended in the tortious interference aspect of the case. Second, that an award of fees and costs under Va. Code § 18.2-500 is not mandatory and that the court should exercise its discretion to deny any award at all. Third, that fees incurred in the earlier appeal of this case are not recoverable since no issue involving the conspiracy count was included in any assignment of error filed by Maximus in the Supreme Court.[1] Fourth, that time spent in preparing the first amended motion for judgment, to which a demurrer was sustained, should be excluded. Fifth, that since Maximus abandoned its claim for punitive damages at the beginning of the trial, a reduction in fees is warranted. Sixth, that Maximus' actions in the procurement action — actions which this court has criticized — would make an award of fees unjust. Seventh, that the fees requested are out of proportion to the results obtained. And eighth, while not included in their memorandum but argued at the hearing on Maximus' request for fees and costs, that Maximus is not entitled to recover fees for efforts

---

[1] At an earlier trial of this case, the court granted defendants' motion to strike at the conclusion of Maximus' case in chief. Maximus appealed, and the Supreme Court reversed. 254 Va. 408 (1997).

expended in recovering fees and costs. Each of defendants' arguments is rejected.

With regard to defendants' argument that a reduction in fees must be made for time spent on Maximus' claim of tortious interference against Lockheed, no reduction is appropriate. While it is true that Maximus is only entitled to fees under Va. Code § 18.2-500, which deals with conspiracies, it was Lockheed's tortious interference with Maximus' contract expectancy that formed the basis of the conspiracy at issue here. In fact, without Maximus' proof of tortious interference against Lockheed, it could not have proved conspiracy against Lockheed and the Center, and everything Maximus' lawyers did to prove tortious interference by Lockheed helped to prove a conspiracy by Lockheed and the Center. No reduction in fees or costs will be made for this factor.

With regard to whether the court has discretion to totally deny fees and costs under § 18.2-500, the court holds that it does not. First, for the same reasons set out in the October 7 letter opinion that the court lacks discretion to refuse to award treble damages under the statute, the court holds that an award of fees and costs is also mandatory. In fact, the second sentence of the statute, "Such counsel shall in no case receive any other, further or additional compensation except that allowed by the court and any contract to the contrary shall be null and void," makes it clear that fees and costs *must* be awarded by the court. Otherwise, counsel will not be paid at all.

The court also rejects defendants' argument that fees for the appeal are not recoverable. *See* n. 1, above. The fact is that had Maximus not appealed, it would have recovered nothing. The fact that only the tortious interference issues were appealed means nothing more than that without a favorable ruling on those issues, the conspiracy claim could not proceed. And as already noted, it was the tortious interference claim that formed the basis of the conspiracy. The appeal of that claim was as vital to Maximus' conspiracy claim as anything else that happened in the case. Maximus' lawyers are entitled to be reimbursed for it.

Next, defendants argue that $2,796.50 must be deducted from the request for time Maximus' lawyers spent preparing the first amended motion for judgment since a demurrer to that pleading was sustained. The court will not make a reduction. During the course of litigation, many matters arise, some of which are vital to the litigation and others which are not. Whether a reduction in fees should be made for efforts expended in presenting or arguing a matter on which the ultimately prevailing party does not prevail must be determined on a case-by-case basis, not just because a party did not prevail on that particular matter. For example, it would be ludicrous for the court to review

the trial transcript to determine how many times it overruled objections made by Maximus' lawyers and then to deduct fees for the time spent by Maximus' lawyers in making those objections. While the effort expended in preparing the first amended motion for judgment was probably a little more concentrated than that, it does not appear to have been so significant that the total request should be reduced. Indeed, Maximus was given leave to amend that motion for judgment, which it did, and the preparation of it undoubtedly lessened the time it took to prepare the amendment. In any event, the court will not make the reduction sought by defendants.

The fact that Maximus abandoned its claim for punitive damages also does not warrant a reduction in fees. The court has now heard this case through two pretrial periods and one-and-a-half trials. *See* n. 1, above. Whatever efforts Maximus expended on the issue of punitive damages that were not also relevant to the other issues in the case were minimal, if any. In fact, the court can think of no fact or argument that would have been made or presented differently had the issue of punitive damages remained in the case, except, of course, that Maximus would have told the jury that it wanted punitive damages. No reduction in the requested fee will be made for Maximus' having abandoned its punitive damages claim.

With regard to defendants' argument that Maximus' actions in the procurement process make any award of fees and costs unjust, the court tends to agree. In fact, the court still feels, as it expressed in its October 7th opinion letter, that Lockheed *and* Maximus "engaged in the type of concealment and sharp practices that would make television's J. R. Ewing of 'Dallas' fame proud." Defendants' argument in this regard, however, is no different from the argument already considered that the court has discretion not to make any award of fees and costs at all. For the reasons stated in the October 7 opinion concerning treble damages and for the reasons already stated in this opinion concerning fees and costs, the court concludes that it does not have the discretion that defendants assert it has. Section 18.2-500 is mandatory. Fees and costs must be awarded.

As to whether the requested fees are out of proportion to the results obtained, they are not. The total recovery in this case will be $2,223,372. The fees requested are $347,875, less than 16% of that amount. That is not unreasonable. Moreover, even if the fees constituted a higher percentage of the recovery — the requested fees are 47% of the amount of damages before trebling — that would not be a reason to reduce them. Where the legislature has enacted a fee-shifting statute, it would be unfair to penalize a lawyer, or the lawyer's client, for pursuing a case in which the potential monetary recovery is small. In fact, to do so would defeat the very purpose of fee-shifting statutes

generally since one of their purposes is to encourage lawyers to take cases that they otherwise would not take. Whatever public policy the legislature is trying to advance by enacting a fee-shifting statute — in this case, the public policy against unlawful conspiracies — that public policy is just as important in "little" cases as it is in "big" ones. And while it cannot be said that this case is a little case, the principle is the same. Thus, while in this particular case the fee requested is not out of proportion to the amount recovered, it would make little difference to the court if it were.

Finally, the court rejects defendants' argument that Maximus' lawyers are not entitled to recover fees for their efforts to recover fees. In fact, the same argument was made in *Green v. Insurance Claim Cars, Inc.*, 45 Va. Cir. 158 (1998), a case involving a claim for fees under Va. Code § 59.1-207.14, part of Virginia's "Lemon Law." There, the court said:

> [T]he same legislative intent necessarily inherent in the enactment of fee-shifting statutes requires that lawyers be reimbursed for their time in enforcing the fee-shifting provisions of those statutes. Otherwise, lawyers will be discouraged from bringing the very claims the legislature has seen fit to encourage.

*Id.*

Indeed, if successful lawyers are forced to expend huge sums of time and money to recover the fees and costs which the legislature has determined they should recover, with no hope of being reimbursed for such efforts, opposing parties will be encouraged to oppose even the most reasonable requests for fees and costs in the hope that some concession will be made in the amounts requested. This court holds that litigating the issue of fees and costs is as much a part of a lawsuit as any other part. Maximus' lawyers are entitled to be reimbursed for their efforts here.

### Order

This cause came on September 10 and November 16, 1998, on defendants' motions to strike plaintiffs' evidence, to set aside the jury's verdict, for a mistrial, and to reconsider an earlier ruling, and on plaintiff's motions for treble damages and for an award of attorneys' fees and costs, and was argued by counsel.

Upon consideration whereof, and for the reasons stated in the letter opinion dated October 7, 1998, and the letter opinion dated this date, it is ordered that defendants' motions to strike plaintiffs' evidence, to set aside the

jury's verdict, for a mistrial, and to reconsider an earlier ruling are denied, except that the motion to set aside the jury's verdict is granted to the extent set out in the letter opinion dated October 7, 1998.

It is further ordered that plaintiff's motions for treble damages and for an award of attorneys' fees and costs are granted.

Accordingly, it is ordered that plaintiff, Maximus, Inc., have judgment against the defendants, Lockheed Information Management Systems Company, Inc., and the Center for the Support of Families, Inc., jointly and severally, in the amount of $2,223,372, with interest thereon at the rate of 9% per year from today's date until paid, plus attorneys' fees in the amount of $347,875 and costs in the amount of $1,372.02.

The parties' exceptions to the portions of this order adverse to them are noted.

A copy of this order was mailed this day to counsel of record.