# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## SINCLAIR REFINING COMPANY V. HAMILTON & DOTSON, TRADING AS CITY SERVICE STATION.

March 14, 1935.

Present, Campbell, C. J., and Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*R. S. Graham, H. J. Kiser* and *E. M. Fulton,* for the plaintiff in error.

*M. M. Heuser, H. M. Bandy* and *Morton & Parker,* for the defendants in error.

CHINN, J., delivered the opinion of the court.

This is an action by notice of motion brought by the defendants in error (hereinafter generally referred to as plaintiffs) against Sinclair Refining Company (hereinafter generally referred to as defendant), to recover damages for alleged breach of contract. There was a verdict and judgment for the plaintiffs, which the defendant below has brought before this court for review.

By a written contract of lease, dated March 8, 1929, the plaintiffs rented from the Central Oil Company a certain garage situated in the town of Norton, Va., for a term of one year, at a rental of $100 per month. The said garage was used by the plaintiffs for a general automobile and service station business, including the sale of gasoline and automobile accessories. The building was located on land leased by Central Oil Company from the Norfolk and Western Railway Company, which lease contained a stipulation that the Central Oil Company should vacate the property on thirty days notice from the railway company, and said provision was incorporated in the lease from the Central Oil Company to the plaintiffs. The last named lease also contained a provision that the plaintiffs should have the right of renewal on the same terms, provided they gave the Central Oil Company notice of such purpose thirty days before the expiration thereof.

It appears from the evidence that in December, 1929, plaintiffs informed J. K. Cunningham, an officer of the Central Oil Company, that if said lessor would agree to erect an addition to the garage building suitable for an automobile Duco paint shop, they would be willing to renew the lease and pay $100 per month as theretofore, but if the company did not agree to erect the addition they would not be willing to pay more than $75 per month for the premises. It is testified by plaintiff, Dotson, that Cunningham agreed to

erect the paint shop, but before the new lease agreement to that effect could be consummated the Central Oil Company sold its entire business, including the garage occupied by the plaintiffs, to the Sinclair Refining Company; that on February 5, 1930, he informed certain representatives of said company that plaintiffs had a lease contract with the Central Oil Company for said garage which ran up to March 8, 1930, and that the Central Oil Company had promised to erect an addition to the garage to be used as a Duco paint shop in connection with the business; that he was then told by said representatives that the defendant corporation would construct the addition, and it was thereupon agreed between the plaintiffs and defendant that the plaintiffs would pay $100 per month rent for the garage building only on condition that the Duco paint shop was erected, but if the same was not erected the plaintiffs were to pay only $75 per month.

It appears that although the defendant failed to construct the paint shop, the plaintiffs continued to occupy the premises with the expectation that this would be done, and paid rent at the rate of $100 per month until November 1, 1930, when the plaintiffs, having incorporated their business, effected a lease of the premises with the defendant company at the rate of $75 per month from that date.

The notice of motion alleges that by reason of the failure of the defendant to erect said Duco paint shop, the plaintiffs "lost and were deprived of certain profits and advantages which they would have otherwise acquired, and were otherwise caused great damage." With said notice plaintiffs filed a bill of particulars setting forth in detail five items of damages relied upon for recovery, as follows:

(1) That relying on the defendant corporation's promise to erect the paint shop, the plaintiffs had purchased certain tools and equipment which they would not have otherwise purchased, and as a result of the defendant's breach of the contract the tools became useless to the plaintiffs and they were compelled to sell the same for twenty-five per centum of their cost value, at a loss of $341.62.

(2) That in reliance on the defendant's promise, the plaintiffs employed an expert Duco paint and repair man, one Carl Matusczyck, to operate and manage said shop, and guaranteed him earnings of not less than $225 per month, but the said Matusczyck was able to earn and have paid to him on the said contract of employment only $766.66 between March 8, 1930, and November 1, 1930, instead of $1,625 which he would have earned and had paid to him if said paint shop had been erected, thereby causing the plaintiffs to stand bound and obligated to pay said Matusczyck the sum of $858.33.

(3) That upon the failure of the defendant corporation to erect the Duco paint shop, they found it necessary to erect temporary quarters in the garage building for the use of said expert, at an expense of $35.

(4) That from March to November 1, 1930, the plaintiffs paid the defendant $100 per month rental, thus, in view of the defendant's continuing breach of the contract to erect the paint shop as alleged, paying an excess of $25 per month for eight months, or $200, which they are entitled to recover back because of said breach.

(5) That by reason of the alleged breach of contract the plaintiffs were damaged in the sum of $2,500 for the loss of good will, loss of trade, and the loss of anticipated profits from the Duco paint business which they would have realized through the operation of said shop if the same had been erected.

The total damages alleged in the bill of particulars amount to $3,934.94, and the jury rendered a verdict for the full amount claimed. The defendant moved the court to set aside the verdict for various reasons set forth in the record, whereupon the court entered an order holding that the item of $200 for excessive rent paid and the item of $341.62 for alleged loss on resale of tools could not be recovered, and put the plaintiffs upon their election to have the said verdict set aside and a new trial awarded, or abate the amount of recovery to $3,393.33. The plaintiffs elected to accept said

reduction, and the court thereupon entered judgment accordingly.

The petition contains ten assignments of error; and 124 exceptions to the rulings of the trial court on the admissibility of evidence, in giving instructions, and in refusing to set aside the verdict of the jury, are set forth in the record. In the view we take of the case, however, we deem it only necessary to discuss the question presented by the record of whether the damages awarded by the jury were sufficiently proved, and are recoverable in law under the facts and circumstances of the case. The general rule on the subject is thus stated in 8 R. C. L., section 25, page 455:

"In an English case decided in 1854 the rule was laid down that the damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it, and the pronouncement in that case has been generally accepted as an accurate statement of law on the subject. This is known as the rule in *Hadley* v. *Baxendale,* and is sometimes spoken of as having originated in that case, though it is in reality an embodiment of civil law principles, and is substantially a paraphrasing of a rule on the subject as it had been stated at an earlier date in the Code Napoleon, by Pothier, and by Chancellor Kent." See *Manss-Owens Co.* v. *H. S. Owens & Son,* 129 Va. 183, 105 S. E. 543.

Coming to the several items of damages as set forth in the plaintiff's bill of particulars we find, as has already been stated, that the alleged loss on the resale of the tools has been eliminated by the court below, and, therefore, that item needs no comment. The first item to be considered, therefore, is whether the $858.33, which the plaintiffs claim they owe the Duco expert, Matusczyck, on account of their contract with him, is recoverable. The agreement was that after deducting the cost of materials, Matusczyck was to

receive fifty per centum of the proceeds of the paint shop business, which plaintiffs guaranteed would not be less than $225 per month.

It is testified by plaintiff, Dotson, that they made the bargain with Matusczyck, and installed him in a paint shop which they opened in the garage, in the month of January, 1930, before the defendant corporation purchased the holdings of the Central Oil Company, and before the promise to erect the addition to the garage, as plaintiffs claim. It is true that Mr. Dotson testified that he told Mr. Martin, of the defendant company, on February 5th, that plaintiffs had employed an expert painter for the shop they wanted defendant to erect, but there is no evidence to show that the defendant knew that the plaintiffs had guaranteed Matusczyck any particular compensation, or that they had agreed to hire him for any particular length of time. On the other hand, both parties knew the lease was subject to revocation on thirty days notice by the railroad company. Under these circumstances we do not think it can justly be said that the balance the plaintiffs claim they owe Matusczyck on wages can reasonably be considered as damages naturally arising from the breach of the alleged contract itself, or can reasonably be supposed to have been within the contemplation of the defendant at the time it made the contract as a probable result of the breach thereof. It would extend the rules governing the case beyond all reasonable limits to hold that the defendant contemplated that it would be responsible, in case of failure to erect the paint shop, for any deficiency in Matusczyck's earnings under the agreement between him and the plaintiffs, of which defendant had no knowledge and with which it had nothing to do. We are, therefore, of the opinion that the above item of damages is not recoverable in law under the circumstances.

Neither do we think the plaintiffs are entitled to recover the $35 for the alleged cost of constructing temporary quarters for the painter to do his work. This expense was incurred several weeks before the defendant acquired the property or had any dealings with plaintiffs, and

could not, therefore, have been the result of the alleged breach of contract on the part of defendant. There is no evidence to show that the defendant ever obligated itself to reimburse plaintiffs for this expenditure, or that either party had any such thing in mind when the alleged contract was made.

The fourth item of damages alleged in the bill of particulars, which plaintiffs claim is in excess of the amount they agreed to pay for the rental of the garage, as has been noted, was also stricken out by the trial court, and need not be considered.

We now come to the item of $2,500, which the jury allowed as damages for alleged loss of good will, loss of trade, and the loss of profits which plaintiffs claim they would have made in the Duco painting business.

It is well settled that where the loss of prospective profits is the direct and proximate result of the breach of the contract, and they can also be proved with a reasonable degree of certainty, such loss is recoverable, but it is equally well settled that prospective profits are not recoverable in any case if it is uncertain that there would have been any profits, or if the alleged profits are so contingent, conjectural, or speculative that the amount thereof cannot be proved with a reasonable degree of certainty. *Manss-Owens Co.* v. *H. S. Owens & Son,* 129 Va. 183, 105 S. E. 543, *supra;* 8 R. C. L., section 62, pages 501, 502.

Under the application of the above rule it is held in Virginia, in accordance with the general doctrine on the subject, that where the business which is interfered with or prevented as a result of a breach of contract is a new or unestablished nonindustrial business, or one merely in contemplation, the anticipated profits from such business cannot be recovered, for the reason that it cannot be rendered certain that there would have been any profits at all from the conduct of such business.

In the case of *Whitehead* v. *Cape Henry Syndicate,* 111 Va. 193, 68 S. E. 263, 264, Judge Buchanan, speaking for the court, said:

"It is insisted by the plaintiff, however, that even if the gains or profits sought to be recovered do depend upon future bargains and states of the market, they can be recovered if the business interfered with or destroyed is an established one.

"Even if this were so (as to which we express no opinion), it would not aid the plaintiff, since his business was not an established one. The doctrine in those jurisdictions in which the rule invoked prevails is thus stated in 13 Cyc. 59: 'Where an established business is wrongfully injured, destroyed or interrupted, the owner of such business can recover damages sustained; but in all cases it must be made to appear that the business that is claimed to have been interrupted was an established one; that it had been successfully conducted for such a length of time and had such a trade established that the profits thereof are reasonably ascertainable;' but 'where a new business or enterprise is floated and damages by way of profit are claimed for its interruption or prevention, they will be denied, for the reason that such business is an adventure as distinguished from an established business, and its profits are remote and speculative, existing only in anticipation.' "

In the case of *Forbes* v. *Wyatt*, 143 Va. 802, 129 S. E. 491, 493, where there was an action by a tenant against his landlord for damages arising out of the landlord's failure to deliver possession of the leased premises on the date provided for in the lease, Judge McLemore, speaking for the court, states the rule as follows: " 'As a general rule the expected profits of a commercial business are too uncertain, speculative, and remote, to permit a recovery for their loss. However, the loss of profits from the destruction or interruption of an established business may be recovered for if the amount of actual loss is rendered reasonably certain by competent proof; but in all such cases it must be made to appear that the business which is claimed to have been interrupted was an established one; that it had been successfully conducted for such a length of time, and had

such a trade established that the profits thereof are reasonably ascertainable.' "

In *Cramer* v. *Grand Rapids Show Case Company*, 223 N. Y. 63, 119 N. E. 227, 228, 1 A. L. R. 154, where the plaintiff sought to recover damages for breach of a contract to deliver store fixtures at a certain time which necessitated delay in the opening of the store, the court said: "A distinction exists between the interruption of an established business and a new venture. The owner of an established business may have it in his power to establish with reasonable certainty the amount of capital invested, the monthly and yearly expenses of operating his business, and the daily, monthly, or yearly income he derived from it for a long time prior thereto and for the time during which the interruption of which he complains continued, thereby furnishing a reasonably correct estimate of the nature of the legal injury and the amount of damages which resulted therefrom. While evidence of such facts may be admissible, they must not be uncertain or problematical. * * * The requirement imposed upon one whose business has been established and interrupted cannot be enforced as to him and made less stringent to one embarking in a new business, who cannot furnish data of past business from which the fact that anticipated profits would have been realized can be legally deduced."

In the note to the above case numerous cases are cited holding the general proposition, as stated by the annotator, that prospective profits of a new nonindustrial business or one merely in contemplation are too uncertain and speculative to form a basis for recovery, for the reason that there are no facts extant as in the case of an existing business from which the amount of such profits may be estimated with reasonable certainty.

Thus, in *Favar* v. *Riverview Park*, 144 Ill. App. 86, it was held that the measure of damages for breach of a contract to grant an amusement park privilege for the operation of a new venture was the difference between the actual rental value and rent reserved, and did not include profits, if any,

which might have been realized, since there was no tangible basis of computation.

And in *Engstrom* v. *Merriam,* 25 Wash. 73, 64 P. 914, which was an action to recover damages for failure to give possession of property leased for the purpose of establishing and conducting a saloon, it was held that since the business was a new one, the measure of damages was the difference between the rental value and the rent reserved, and not the difference between the rent and the value of the plaintiff's business, since the latter rule necessitates an estimate of profits, which is impossible in case of a new business, as there is no basis in such a case for an estimate.

The same rule was applied in *Gross* v. *Heckert,* 120 Wis. 314, 97 N. W. 952, where the lessor of a building proposed to be used for a saloon failed to deliver possession.

And again in *Jarrait* v. *Peters,* 145 Mich. 29, 108 N. W. 432, where there was an action to recover damages for refusal to give possession under a lease of a place wherein the lessee intended to carry on a carpet cleaning and weaving business, the same rule was applied, the court holding that where the business is a new one there can be no basis upon which to estimate profits, and pointing out that a different rule applies when a business has been interrupted after its establishment.

Attention may also be called to the application of the same doctrine in the cases of *Kenny* v. *Collier,* 79 Ga. 743, 8 S. E. 58; *Leslie E. Brooks Co.* v. *Long,* 67 Fla. 68, 64 So. 452; *Drischman* v. *McManemin,* 68 N. J. Law 337, 53 Atl. 548; *Sloan* v. *Hart,* 150 N. C. 269, 63 S. E. 1037, 21 L. R. A. (N. S.) 239, 134 Am. St. Rep. 911; *Price* v. *Eisen,* 31 Misc. 457, 64 N. Y. S. 405; *Milheim* v. *Baxter,* 46 Colo. 155, 103 P. 376, 133 Am. St. Rep. 50, where the tenant was evicted on an account for which the landlord was held responsible, and it was held that the tenant could not recover for anticipated profits on the business which had not been established.

In the instant case plaintiffs are seeking to recover damages for the defendant's failure to construct a Duco

paint shop, which was to be placed in charge of an expert Duco painter as an adjunct to the general automobile repair and filling station business which the plaintiffs had been conducting. It was, therefore, a new and untried venture on their part for which, they allege, it was necessary to have a specially constructed building and an expert operator and assistant. This being the case, we think that the doctrine laid down in *Manss-Owens Co.* v. *H. S. Owens & Son, supra,* and other cases above cited, is fully applicable, and plaintiffs are, therefore, not entitled to recover profits which they hoped to derive from said business, for the reason that there is no basis upon which to calculate with any certainty that plaintiffs would have received any profits at all.

But even if it were conceded that the business was not a new one, we think the plaintiffs have failed to establish the amount of profits that would have been derived from said business with any degree of certainty whatever. In attempting to show what the profits would have been, it is testified by the plaintiffs that they had been promised a number of paint jobs by automobile owners, which failed to materialize because they did not have a suitable building in which to do the work; and Mr. Dotson specifies a number of such instances with the estimated amount that would have been charged for the several jobs, and the estimated cost of the material which would have been used, claiming, according to his estimates, that the plaintiffs lost prospective contracts which would have yielded them a profit approximating $1,000. This, however, is necessarily pure conjecture, for the reason that the amount of such profits were entirely contingent upon the number of jobs which would have actually been brought to the plaintiffs, their bargains with the respective owners, what plaintiffs would have been able to collect for them, and what the materials would cost, to say nothing of the cost of labor, and other contingencies which should be taken into consideration.

In *Atlantic & Danville R. R. Co.* v. *Delaware Construction Co.,* 98 Va. 503, 37 S. E. 13, it was held in an action to recover damages for failure to complete a pier in a given

time, that the estimated gains or profits which the plaintiff might have made on the handling of freight that he was compelled to decline in consequence of non-completion of the pier, were too remote and speculative to be recovered.

And in *Grubb* v. *Burford,* 98 Va. 553, 37 S. E. 4, it was held that while gains prevented by withholding or interfering with property, or by breach of contract, may be recovered if proved; yet, as a general rule, profits dependent upon future bargains or states of the market, are not subjects of recovery.

And in *Bristol Belt Line Railway Company* v. *Bullock Mfg. Co.,* 101 Va. 652, 44 S. E. 892, where the railway company sought to recover damages for loss of profits caused by the breach of a contract to deliver machinery at a certain time, and the railway company proved the number of fares received by the road on five consecutive days immediately preceding the suspension of traffic, and on eight consecutive days after its operations had been resumed, it was held that the amount of the damages was too speculative and conjectural to be recoverable.

As to the claim made by plaintiffs for damages to good will and loss of trade, it seems obvious there can be no recovery for the reason that a new and unestablished business can have no good will or trade to lose.

Finally, it is contended by defendant that under the terms of the contract as alleged, plaintiff's damages could not in any event be more than $25 per month for the eight months which they occupied the premises under the lease before it was voluntarily surrendered. The bill of particulars filed by plaintiffs contains this allegation: "It was understood and agreed between the plaintiffs and the defendant that the plaintiffs would pay $100 per month rental for the garage building, only on condition that the Duco shop was erected. If the same were not erected the plaintiffs would pay only $75 per month. From March to November, 1930, the plaintiffs paid the defendant $100 per month as agreed in the contract, thus, in view of the defendant's continuing breach of contract, paying an excess of

$25 per month for eight months, or $200, which they are entitled to recover back because of the defendant's breach of contract as alleged in the notice."

In view of this statement of the contract between the plaintiffs and defendant, which is also supported by their own evidence, it seems apparent to us that neither of the parties contemplated damages in event the defendant failed to erect the paint shop, it being understood that in case of such failure the rental should be $75 instead of $100 per month as formerly. The difference between these amounts we think the plaintiffs would be entitled to recover if they had not accepted the terms prescribed by the trial court without objection. But, having done so, and no cross-error being assigned to the action of the court, this court cannot now correct the error by awarding plaintiffs the $200 damages to which we think they would be otherwise entitled.

After careful consideration, we are of the opinion that the judgment of the circuit court should be reversed, and a judgment entered here for the defendant.

*Reversed.*