# CIRCUIT COURT OF THE CITY OF RICHMOND

Richmond Metropolitan Authority

v.

McDevitt Street Bovis, Inc.,
and Torrence, Dreelin,
Farthing & Buford, Inc.

October 27, 1997

Case No. LC-390-3

BY JUDGE T. J. MARKOW

The parties appeared on defendant McDevitt Street Bovis, Inc.'s motion for summary judgment, and memoranda were received and argument was heard. The motion for summary judgment is based upon the pleadings and plaintiff Richmond Metropolitan Authority's responses to interrogatories. For purposes of the motion for summary judgment, McDevitt asks the court to accept as true the factual allegations in the motion for judgment and in the answers to interrogatories.

Richmond Metropolitan Authority (RMA) is the owner of "the Diamond," Richmond's AAA baseball stadium which was designed and constructed by McDevitt in 1984-85 pursuant to a written contract. During inspections in 1996, RMA discovered that McDevitt failed to comply with the plans and specifications. RMA was required to make extensive repairs and seeks damages for those repairs.

The motion for judgment contains three counts. Count I for breach of contract has been dismissed as barred by Va. Code Ann. § 8.01-250, the statute of repose for claims under construction contracts. Count II alleges a

cause of action for actual fraud, and Count III alleges a claim for constructive fraud. McDevitt's motion for summary judgment is based on the theory that no cause of action lies in tort for fraud where the facts supporting the misconduct are nothing more or less than the failure of McDevitt to comply with the terms of its contract. RMA argues that the conduct described includes all of the elements of a cause of action for actual or constructive fraud, and in essence it is permitted to proceed under either theory.

McDevitt's design for the Diamond included several concrete structural members which supported the upper seating levels and the roof. These concrete members surrounded steel rods which were encased in tubes. After erection of the members, the steel rods were post-tensioned. Grout was then to be injected into the rod tubes, surrounding the rods and permitting them to strengthen the member by bonding with the concrete. The grout was also supposed to protect the rods from corrosion.

In 1996, some eleven years after completion of the construction, RMA determined that McDevitt had failed to inject the grout and that some of the rods were corroding. RMA had also discovered some cracking which indicates that the members did not possess their design strength. RMA had the members grouted and repaired. In Counts II and III of its motion for judgment RMA claims that McDevitt committed actual or constructive fraud upon it and it seeks compensatory and punitive damages.

RMA claims several misrepresentations which form the basis of its fraud claims. The misrepresentations are of two types. The first are:

(a) the submission of plans and specifications which describe how the structural members were to be built;

(b) the submission of "as built" drawings detailing how the members were built — these show that the grout had been injected into the grout tubes;

(c) McDevitt's submission of applications for progress payments in which it represented compliance with the plans and specifications and on which RMA relied to make payments;

(d) the submission of the certificate of substantial completion for final payment in which it was represented that the completed structure was constructed in accordance with the plans and specifications.

The second type of misrepresentation is that McDevitt concealed the fact that it cut off and sealed the grout tubes during the construction phase, leading RMA to believe that the grout was in place when, in fact, it was not.

Without question, RMA has pleaded facts which support a cause of action for fraud; i.e., intentional or innocent misrepresentation of material facts upon which RMA relied to its detriment.

Analysis of the misrepresentations reveal that, had the contract been complied with, there would have been no misrepresentations; i.e., the misrepresentations and a failure to perform the contract are one and the same. The Supreme Court of Virginia has held that while failure to perform an antecedent promise may constitute a breach of contract, the breach does not amount to fraud. *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985) (citing with approval *Lloyd v. Smith*, 150 Va. 132, 145-147, 142 S.E. 363, 365-366 (1928)). Here in its contract McDevitt promised to inject the grout, promised to submit accurate certificates for progress payments, promised to submit an accurate certificate of final completion and "as built" drawings, and promised to fill the grout tubes before cutting them off and sealing the tubes. McDevitt's failure to perform each and every one of these promises was a breach of its contract, not fraud, even though those breaches in other contexts might have formed the elements for fraud.

The only exception to this principle is where, at the time the promise is made, the promisor held the intention that the promise would not be performed; i.e., the distinction between fraud in the inducement versus fraud in the performance. In the first instance there is a cause of action for fraud; in the second, there is none. *See Colonial Ford*, 228 Va. at 677, 325 S.E.2d at 94. RMA does not make such a claim here.

In *Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983), the Supreme Court held that a breach of contract, even when accompanied by an ulterior motive, malice, or even willful intent to injure, does not support punitive damages. Such damages are within the province of tort law, not contract law. To recover a tort measure of damages, there must be facts amounting to an independent tort beyond the breach of contract. Notably, Justice Compton's dissent discussed the dichotomy between causes of action based in contract from those based in tort. He argued that, prior to *Kamlar*, tort damages could be awarded in contract cases in which the conduct of the breaching party was tort-like. *Id.* at 708, 299 S.E.2d at 519. The majority eliminated that distinction by requiring facts proving both a breach of contract and an independent tort. *Id.* at 711, 299 S.E.2d at 520. There is no independent tort unless the duty breached is a "common law duty, not one existing between the parties solely by virtue of the contract." *Foreign Mission Board v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991) (citations omitted).

Although *Kamlar Corp.* and *Foreign Mission Board* admittedly deal with punitive damages, both are grounded on the principle that where a duty arising in contract is breached, the cause of action lies in contract and not in

tort notwithstanding the contractual breach with scienter. There is no logical basis to distinguish the principles which control the decision in this case. The duties that McDevitt breached were those solely arising in contract. There is no independent tort.

McDevitt also argues at length that as RMA's damages are solely economic, RMA has no cause of action in tort against McDevitt, citing *Sensenbrenner v. Rust; Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55 (1988), and cases from other jurisdictions. Having given other reasons for determining that RMA has no cause of action in fraud, the court does not reach this issue.

RMA argues that it has alleged the breach of duties which are separate and independent from McDevitt's contractual obligations; i.e., that McDevitt had a common law duty not to defraud RMA. Of course, there is a common law duty that one should not defraud another. Here, however, that duty arises from the contractual relationship. The particular instances of misrepresentation are duties and obligations specifically required by the contract. There is nothing which establishes that the duty breached is separate and independent from the contract. RMA has alleged one set of facts which supports two legal theories of recovery. If there were no contract, then there would have been no duties owed by McDevitt to RMA. RMA is limited to claiming damages for breach of contract which are, unfortunately for it, barred by the statute of repose. Were the rule to be otherwise, the law of contract would be subsumed into the law of tort.

RMA's fraud claims are not viable. The motion for summary judgment will be sustained.