# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

CigarCafe, L.C.

v.

America Online, Inc.

June 30, 1999

Case No. CL980291

BY JUDGE JOHN E. KLOCH

This matter came on upon the Defendant's motion for Summary Judgment on all counts of the Amended Motion for Judgment, and on damages for lost profits, humiliation and embarrassment, compensatory damages, and punitive damages. Plaintiff requests Summary Judgment on Counts III and IV.

In its Amended Motion for Judgment, Plaintiff CigarCafe, L.C., (CigarCafe) seeks damages against Defendant America Online, Inc., (AOL) for fraudulent inducement to enter into Interactive Services Agreement (ISA) (Count I), fraudulent inducement to enter into Shopping Channel Agreement (SCA) (Count II), willful destruction of Plaintiff's business (Count III), civil relief for Computer Trespass, violation of § 18.2-152.4, Code of Virginia, 1950 (Count IV), breach of ISA (Count VI), and breach of SCA (Count VII).

## I. *Facts*

Plaintiff and Defendant entered into a contract entitled Interactive Services Agreement, under which Plaintiff would have a "content" site, a location on the network for information about the product, advertising, and conversing with celebrities, and an electronic store on Defendant's network. The contract was entered into in April, 1997 for a period of one year after extensive negotiations between the parties. The ISA provided that Defendant would cooperate in press releases, marketing, and advertising the sites, and would sell 25% of the advertising space for the sites. The ISA required both parties to cooperate and reasonably assist the other party in supplying material for marketing and promotional activities. Plaintiff was to pay Defendant 15% of revenue from sales and 25% of revenue from advertising.

Plaintiff alleges that Defendant, beginning soon after the agreement was entered into, engaged in various tortious actions. First, Plaintiff alleges that Defendant effectively sabotaged the Plaintiffs launching of the new site by refusing to approve press releases, which forced Plaintiff to cancel the scheduled launch party to which celebrities and news media had been invited. The next major problem arose when Plaintiff attended a conference held by Defendant. At the conference, Defendant announced that it would be effectively removing tobacco and alcohol from its network. Shortly thereafter, Defendant told Plaintiff that it had to "leave" the network. Defendant told Plaintiff that Plaintiff would be allowed to have an Internet site connected to the AOL network by a direct link, which allows access by clicking on an icon in AOL, but that it would not be on the network itself any longer. This also meant that Plaintiff lost the content aspect of its site. Defendant later called Plaintiff and told it that even that was not viable, and then shut down Plaintiff's site completely. Plaintiff was denied the option to reopen it off-network by AOL. These actions occurred in December of 1997 and January of 1998. Defendant argues that its actions were permissible under the contract and otherwise.

## II. *Motions for Summary Judgment on Liability*

### A. *Counts I and II: Fraudulent Inducement*

Facts, as well as inferences drawn from disputed and undisputed facts, are in dispute, including whether the misrepresentations were of present facts or future conduct. Defendant's Motion for Summary Judgment on both of these counts is overruled.

## B. *Count III: Willful Destruction of a Business*

This Court previously determined that there was such a recognized tort in Virginia. Admittedly, the law on this subject is ambiguous. Under the facts of this case, however, a cause of action for willful destruction fails. The tort of wrongful destruction of a business must exist independently of a breach of contract. Here, the allegations do not amount to a separate tort.

Defendant argues that there is not a cause of action for destruction of a business, and the three cases cited by Plaintiff, *Anchor Co. v. Adams*, 139 Va. 388 (1924); *Peshine v. Shepperson*, 17 Gratt. (58 Va.) 472 (1867); and *Kamlar Corp. v. Haley*, 224 Va. 699 (1983), do not create such a cause of action; rather these cases discuss destruction of a business purely in the context of the court's analysis of proof of damages.

Based on *Anchor Co. v. Adams*, 139 Va. 388 (1924), and *Peshine v. Shepperson*, 17 Gratt. (58 Va.) 472 (1867), there appears to be a recognized cause of action in Virginia for willful destruction of business. In *Peshine*, the plaintiff sued defendant for trespass to property. In an attempt to pay off creditors, defendant, in collusion with plaintiff's clerk, entered the plaintiff's store after plaintiff had left for the evening, removed inventory from the store, sold the inventory to the creditors, and later told plaintiff what had been done. The court distinguished trespass to property committed without circumstances of aggravation, meaning no fraud, malice, oppression or other special aggravation, from trespass "well calculated to injure the credit and business standing of a merchant... ." In the latter situation, the court explained that "damages resulting from the injury to the credit and business standing of the plaintiff, and from the injury to his business" were recoverable. The court suggested that the jury, as long as it did not act with partiality or prejudice, would be free to give compensatory damages or damages "with a view to punishment." In this case, it appears that the cause of action was for trespass, and the destruction of business theory had to do with determining that the trespass was aggravated rather than without aggravation. However, in *Anchor Co.*, the Virginia Supreme Court summarized *Peshine* as "an action for destruction of a business by the illegal levy of an attachment." 139 Va. 388, 392 (1924). In that case, the destruction came about by the illegal levy.

In *Anchor Co.*, defendant assented to the assignment to defendant of a lease of a building used as a restaurant. During the lease, defendant began to make improvements to the property. Defendant erected scaffolding around the property and began removing the roof, adding several stories to the building and taking out partitions on the street floor. These conditions drove away

customers and "made it impossible for the plaintiffs to continue their business ... and were in plain disregard of the rights of its tenants." *Id.* at 390. The issue before the Court involved damages. The court explained that "the willful and unauthorized destruction of one's business is ground for the imposition of punitive damages on the wrongdoer." *Id.* at 392 (citing *Peshine v. Shepperson*, 58 Va. 472 (1867)). The court held that the circumstances justified imposition of punitive damages since defendant, without justification and in disregard of its contract, made it impossible for plaintiffs to continue their business. *Id.* at 393.

Both *Peshine* and *Anchor Co.* appear to recognize destruction of business as recoverable, but as part of another wrongful act, tortious trespass and breach of contract, respectively. The willful destruction claims were important to damages because they demonstrated the existence of malice, willfulness, or other aggravation, thus allowing for certain damages.

In *Kamlar Corp. v. Haley*, 224 Va. 699 (1983), the Supreme Court of Virginia found that the trial court erroneously allowed the jury to consider punitive damages for breach of a purely contractual duty by defendant, Kamlar Co. In *Kamlar*, plaintiff sold his business assets to defendant and received a five year employment contract to act as a manager of the company. While serving as manager, plaintiff discovered a hydraulic pump he bought long before the sale of the business. He checked and found that it was not included on the list of assets in the contract for sale. Thus, he returned the pump for credit and kept the money for himself, supposedly believing that it belonged to him. Defendant discovered this, tried to make plaintiff confess to stealing, and refused plaintiffs offer to reimburse defendant if the company's officers determined that plaintiff was not the owner. Apparently, defendant's officers had reservations about plaintiff's management ability since the sale of the business, and defendant used this action by plaintiff as a pretext for firing him. As a general rule, damages for breach of contract are limited to pecuniary loss, and punitive damages are not recoverable. This rule does not apply "where the breach amounts to an independent, willful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression." *Id.* at 705 (quoting *Wright v. Everett*, 197 Va. 608, 90 S.E.2d 855 (1956)). A breach of contract, accompanied by ulterior motives, in the absence of an independent tort" does not support a claim for punitive damages. *Id.* at 706 (citations omitted). The court observed that "[s]ome jurisdictions permit punitive damages where the intent of the breaching party is 'malicious,' consisting of 'an evil or rancorous motive influenced by hate; the purpose being to deliberately and willfully injure the plaintiff ...' but most jurisdictions have required that the plaintiff allege and prove facts amounting to an independent tort, before

permitting the recovery of punitive damages." *Id.* (citations omitted). The court adopted the latter rule, which it explained was established in *Wright*. Thus, according to *Kamlar*, a plaintiff must allege a count of an independent, willful tort separately from a count alleging breach of contract. *Id.* at 707.

The Court distinguished *Anchor Co. v. Adams*, where it allowed punitive damages for the willful destruction of a business, because the plaintiff alleged not only breach of contract, but independently tortious conduct as well. This conduct was the unlawful entry of the leased premises, the erection of scaffolding, removal of the roof and moving the partitions, "thus destroying the lunchroom business conducted by the tenant." *Kamlar* does not make clear whether the actions, which resulted in the destruction, were the tortious acts, or whether the destruction of the business itself was the tortious act. Since the Court described the destruction as defendant's apparently intended result of the other actions, it appears that the physical unlawful activities were the tort, whereas the destruction of the business was the resulting damage, and therefore relevant to a damages question only.

The dissent in *Kamlar* argued that the majority altered the rule, established in *Wright*, that punitive damages may be recovered in breach of contract actions "where the breach amounts to an independent, willful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression — as, for example, in actions for breach of marriage contracts." *Id.* (dissenting in part) (quoting *Wright v. Everett*, 197 Va. 608, 615, 90 S.E.2d 855, 860 (1956)). The dissent characterized the *Wright* line of cases as establishing that the breach need not be an actual tort, as the majority insisted, but rather "the breach must amount to or be analogous to a tort." The dissent noted that in *Anchor* plaintiff sued defendants for a breach of contract. In disregard of this contract, defendant began making improvements to the building which made access to the plaintiff's restaurant dangerous. *Id.* at 708-09. The *Anchor* Court held that punitive damages could be imposed because, "[t]he defendant, in disregard of its contract, made it impossible for its tenants to continue their business … . Those responsible therefor were apparently either ignorant of the plaintiff's rights or else contemptuous of them." *Id.* at 709 (quoting *Anchor Co. v. Adams*, 139 Va. at 392-93) (emphasis added)). The dissent suggested that, although the plaintiff's claim was based on Defendant's tortious conduct, this conduct arose out of the breach of the contract in violation of plaintiff's rights, as opposed to a tort independent of that contract.

The Supreme Court of Virginia, in *Foreign Mission Board v. Wade*, 242 Va. 234 (1991), announced that *Kamlar* and *Wright* established the principle "that punitive damages are recoverable only if an independent tort is pleaded

and proved. They do not, however, stand for the proposition that the breach of a contractual duty constitutes an independent tort." *Id.* at 241. The court acknowledged that a party's action can show both a breach of contract and a tortious breach of duty, "[b]ut the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.*

In *R.M.A. v. McDevitt Street Bovis, Inc.*, 43 Va. Cir. 468 (1997), Judge Markow held that the plaintiff had failed to allege any breach of duties separate and independent from the contractual obligations. Plaintiff argued that it was sufficient to have alleged that defendant had a common law duty not to defraud plaintiff. Judge Markow responded, "[o]f course, there is a common law duty that one should not defraud another. Here, however, that duty [arose] from the contractual relationship. The particular instances of misrepresentation are duties and obligations specifically required by the contract. There is nothing which established that the duty breached is separate and independent from the contract … . If there were no contract, then there would have been no duties owed by defendant to plaintiff." The Judge held that plaintiff was limited to claiming damages for breach of contract. *Id.* at 471.

The dismissal of allegations of constructive and actual fraud in *RMA* was affirmed by the Virginia Supreme Court in 256 Va. 553 (1998). The court explained that where the act or omission which, without a contractual obligation involved, would not give rise to a cause of action, then the action is founded upon contract. In contrast, where "the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort." *Id.* at 558. The Court acknowledged that it has allowed a party to show both a breach of contract and a tortious breach of duty, but that the duty breached must be a common law duty that does not exist solely because of the existence of a contract. *Id.* (citing *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)). Plaintiff's claim for constructive fraud was dismissed, since its allegations amounted merely to allegations of negligent performance of the contract and "[a] tort action cannot be based solely on a negligent breach of contract." *Id.* at 599. The Court also affirmed the Circuit Court's dismissal of plaintiffs allegation of actual fraud since "each particular misrepresentation by McDevitt related to a duty or obligation that was specifically required by the … Contract." The Court distinguished a situation where an allegation involved fraudulent inducement. The court explained that fraud in the inducement, where a party makes a promise but at that time intends not to perform, constitutes actual fraud. *Id.* This discussion suggests that in the present case, Plaintiff could show an independent tort necessary for punitive damages by asserting fraud in

the inducement. Plaintiff did assert fraud in the inducement and could recover punitive damages on those counts. However, this does not resolve whether Plaintiff can recover for willful destruction.

In the present case, Count III of Cigarcafe's Amended Motion for Judgment alleges Willful Destruction of Plaintiff's business. The case law is ambiguous as to whether an independent cause of action exists for willful destruction, or rather such willful destruction provides only the requisite malice/aggravation necessary for an award of punitive damages in a breach of contract action. Based on *Kamlar*, this count falls regardless of which interpretation is adopted. Assuming willful destruction constitutes a common law tort in Virginia, *Kamlar* provides that this tort must exist independently of any breach of contract. The court acknowledged that a party's action can show both a breach of contract and a tortious breach of duty, "but the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.* Count III alleges that the destruction occurred from one or more of the following acts: defendant's refusal to approve or issue a press release announcing Plaintiff's launch, refusal to sell advertising, the removal of Plaintiff's pop-up screen capability without notice and without a contractual basis to do so, refusal to promote any celebrities offered by Plaintiff, removal of the link of keyword "cigar" to a screen linked to Plaintiff's online area without notice, AOL's public statement of opposition to tobacco, and committing computer trespass and locking Plaintiff out of its two electronic stores. All of these actions, other than the trespass, merely constitute potential breaches of duties arising out of the contract, not separate torts. The allegation of computer trespass, while constituting a breach of the contract, is also an independent wrong. However, as is held further in this opinion letter, this statute does not apply to the facts of this case and Plaintiff has not properly alleged a common law trespass. Plaintiff's Motion for Summary Judgment on Liability on Count III is overruled. Defendant's Motion for Summary Judgment on Liability on Count III is sustained. Count III is dismissed.

## C. *Count IV: Computer Trespass*

Plaintiff requests civil relief under § 18.2-152.12, Code of Virginia, 1950, as amended for defendant's violation of § 18.2-152.4. Plaintiff alleges that Defendant committed computer trespass by evicting Plaintiff from the site and removing Plaintiff's "pop-up" images from the network, all in violation of Va. Code § 18.2-152.4. This statute provides that a person shall be guilty of the crime of computer trespass if he "uses a computer or computer network without authority and with the intent to: 1. Temporarily or permanently remove, halt

or otherwise disable any computer data, computer programs, or computer software from a computer or computer network ... [or] 3. Alter or erase any computer data, computer programs, or computer software." § 18.2-152.4(A).

Specifically, Plaintiff alleges that Defendant's actions in removing the pop-up screen functionality in the CigarCafe Online Area permanently removed computer data, programs, and/or software from a computer and/or computer network without authority, and altered and/or erased computer data, programs or software.

Plaintiff states that its programmer disabled the links because Defendant had a "gun to CigarCafe's head." In reality, Defendant's agent told Plaintiff that if Plaintiff would not remove the information, Defendant would. Plaintiff explains that Hoaglund, an employee of Plaintiff, was required by Defendant to remove certain links from the Clerk's store. With the threat that Defendant would disable the links themselves if Plaintiff did not do so, Hoaglund connected her computer to Defendant's computer and with a password transmitted data to the computer in AOL's facility. Plaintiff argues that the Computer Crimes Act definition of a computer network applies. § 18.2-152.2 defines computer network as "a set of related, remotely connected devices and any communications facilities including more than one computer with the capability to transmit data among them through the communications facilities." Defendant responds that this is an incredible interpretation.

Defendant disputes Plaintiff's conclusion that the statute's definition is consistent with the scenario in this case where Plaintiff's programmer used Plaintiff's computer to connect to Defendant's computers to make the required changes. Defendant argues that in order to violate the statute, it must use a computer or computer network to delete data from another party's computer. First, Defendant states that it neither used nor had access to Plaintiff's computers. One of Plaintiff's employees dialed in to a computer at an AOL facility and used a password to be connected with the computer that housed the Clerk's electronic store data that was erased. Defendant states that the alleged trespass occurred on Defendant AOL's computers at AOL's facility. Thus, there can be no violation of the Act because Defendant did not trespass upon, invade, interfere with or infringe on property belonging to Plaintiff. Defendant emphasizes that one of Plaintiff's employees electronically entered Defendant's computers and deleted data.

In *real* property law, an owner or landlord can be sued for trespass on the leased premises. *Johnson v. Marcel*, 251 Va. 58 (1996). In the present case, the ISA agreement provided that Plaintiff owned the Licensed Content and Defendant received a license to use, market, license, distribute, display, perform, transmit and promote the Online Area and Licensed Content

contained in the AOL Network. See ISA, 1.2. In the SCA, Defendant owned the shopping channel. Defendant provided Plaintiff "promotional placement" as a merchant on this shopping channel. When activated, Plaintiff's site could be accessed via the World Wide Web or area on Plaintiff's Server. (Note that parties dispute whether Plaintiff's site was limited to the area or to both the area and the World Wide Web.) See SCA, Introduction. Plaintiff could be considered an owner of computer data, programs or software under the ISA and a lessee under the SCA. However, the ISA also provides that Plaintiff "owns all right, title and interest in and to the advertising and promotional spaces within the AOL Network." See ISA, paragraph 3.1.

Under the computer trespass statute and the statutory definitions, anyone who used a computer or network beyond his authority may be subject to computer trespass. "Uses" a computer or computer network is defined as: "attempts to cause or causes the withholding or denial of use of a computer program, data or software to another user." In the present case, Defendant was not just a user denying access to another user. Defendant owned the network and took away the pop-up privilege and Plaintiff's electronic store. These benefits were conferred to Plaintiff as part of a business relationship established through a contract. Defendant merely took away from Plaintiff the ability to continue using these benefits. Plaintiff had no right to these benefits, except by contract, and thus Defendant may or may not have breached the contract, but did not commit a crime in changing Plaintiff's contractual rights.

Plaintiff alleges that Defendant was using "a computer or computer network without authority" and with the intent to remove and delete certain data. Plaintiff argues that Defendant was "without authority" under the statute because Defendant had no "permission of the owner to use a computer, or used it in a manner exceeding such right or permission."

Owner means "owner or lessee of computer data, computer programs, or computer software or an owner, lessee, or licensee of computer data, computer programs, or computer software." Plaintiff asserts that it is the "owner" of the content that was erased through Defendant's threats and demands to Plaintiff. Plaintiff arguably qualifies for this definition in that it was a lessee or licensee of space on AOL's network. The ISA states that CigarCafe grants AOL exclusive license to use, market, license, etc., the Online Area and Licensed Content contained through the AOL Network. Subject to this license, CigarCafe retains all right, title to and interest in the Licensed Content. ISA, paragraph 1.2.

In order for the statute to apply, Defendant must have used a computer or computer network without authority, meaning it had "no right or permission of the owner to use a computer, or ... [used] a computer in a manner exceeding such right or permission." § 18.2-152.2. Although the SCA contract

between Defendant and Plaintiff gave Defendant the right to be involved in the CigarCafe site, Defendant did not have complete authority to do whatever it wanted to do with the site. The ISA contract, paragraph 1.4, provides:

> AOL shall have the right to remove, or direct ICP [CigarCafe] to remove any Content which, as reasonably determined by AOL (I) violates AOL's then-standard Terms of Service ... the terms of this Agreement or any other standard, written AOL policy or (II) is not specifically described on Exhibit B. [Exhibit B is a detailed description of the Online Area.]

The SCA contract, Exhibit B, paragraph 4 provides:

> AOL shall be entitled to require reasonable changes to the content, features and/or functionality within any screen or form created using AOL's proprietary form technology (a "Rainman Area") to the extent such Rainman Area will, in AOL's good faith judgment, adversely affect operations of the AOL Service.

Thus, the contracts provide that AOL must be reasonable. Defendant insists that it was reasonable to permanently remove, alter or erase data, software, or programs relating to Plaintiff's site from its own server. The removal of the pop-up screen functionality in Plaintiff's Online Area or closure of the electronic stores was certainly not reasonable or unreasonable as a matter of law, as this will be a factual issue at trial. However, this Statute was not intended to apply to this situation. The parties entered into a contract. If we assume the statute is applicable, and if Defendant breached this contract by making unreasonable changes in bad faith, then Defendant would be liable for the crime of computer trespass. This would place too severe a burden on contracting parties. If a company like AOL ever breached a contract, such a breach would usually involve computer access, and such companies necessarily would be criminally liable, whereas breaches of contract in areas of commerce other than online would not have such penalties. The purpose of making computer trespass criminally punishable is "to deter efforts to access a computer, regardless of success." Daniel R. Burk, *Virginia's Response to Computer Abuses: An Act in Five Crimes*, 19 U. Rich. L. Rev. 85, 98 (1984). The purpose of subparagraph (A)(3), was "apparently ... to snare 'hackers,' computer enthusiasts who use their computers to break into governmental, educational, or commercial computer systems." Robin K. Kutz, *Computer Crime in Virginia: A Critical Examination of The Criminal*

156

■■■■■■■■■■■■

*Offenses in the Virginia Computer Crimes Act,* 27 Wm. & Mary L. Rev. 783, 816 (1986).

Even if the Court accepts Plaintiff's argument that Defendant essentially removed and altered/erased the data itself by ordering Plaintiff to do it under alleged duress, Defendant did have a right to make such orders, if they were reasonable. Thus, Defendant was not using a computer in a manner exceeding its right or permission. There is no question that the manner Defendant used, in "requir[ing] reasonable changes to the content ..." was permissible under the contract. Rather, Defendant may not have had the right, under contract, to order the removal of certain subject matter, like a pop-up screen or an electronic store, even though the manner of removal was correct. At most, Defendant would be liable for breach of contract for acting unreasonably under the contract.

In fact, in the Amended Motion for Judgment, Plaintiff states that Defendant removed the pop-up screen capability without notice to Plaintiff; failed to inform Plaintiff prior to the removal of the policy that the pop-up screen could only promote content and not products (the implication Plaintiff is probably trying to make is that Defendant had to inform Plaintiff of this limitation in the contract, and not later); and yet Defendant demanded payment of the creation of this pop-up screen function. These actions appear to comprise the alleged breach. See Plaintiff's Amended Motion for Judgment, paragraph 28. Consequently, Plaintiff's presence on the network or use of the network was not improper, rather, the specific listed acts may have been improper under the contract.

The definition for "without authority" in the original bill before the legislature read:

> A person is "without authority" when he has no right or authority and no reasonable grounds to believe that he has such authority. A person may be using a computer or computer network without authority even when he has the right to use the computer or computer network in some other manner or has the right to use or gain access to the same computer data or computer programs for another purpose which is authorized.

Burk, *supra*, at 96 (emphasis added) (quoting Draft Proposal of Virginia Computer Crimes Act's definition of "without authority.") This original language contained a defense for a defendant who could demonstrate that it had reasonable grounds to believe it had this authority. The omission of this language could be interpreted in one of two ways. The legislature deleted this language because it did not wish to provide a defendant a reasonableness

defense, or it believed the language was unnecessary to preserve defendant's right to make such an argument. Daniel Burk, in his article, *Virginia's Response to Computer Abuses: An Act in Five Crimes*, 19 U. Rich. L. Rev. 85, 98 (1984), argues that the House Committee which modified the bill believed this phrase created an affirmative burden of proof on defendant. *Id.* (citing Draft Proposal of Virginia Computer Crimes Act's definition of "without authority"). The author argues that although the availability of a reasonable grounds defense was deleted, "in all probability, however, the defense of reasonable grounds will go to the general question of intent to commit the crime."

The provision on Computer Trespass is different in that the defendant must intend merely to commit the act of removing or deleting. There is no requirement that the defendant intend a wrong by removing or deleting. In contrast, the Computer Fraud statute, § 18.2-152.3, for example, requires that the defendant intend to obtain property or service by false pretenses, or intend to embezzle, commit larceny, or convert property of another. However, the criminal statute prohibiting trespass other than by computer is analogous. See § 18.2-119. This statute does not expressly require intent, however, "the statute has been construed to require proof of a willful trespass." *Jones v. Commonwealth*, 18 Va. App. 229, 232 (1994) (citations omitted). If the defendant entered another's land "in good faith under claim of right" although defendant was mistaken, and defendant did not use force, defendant will not be convicted of trespass. *Id.* (citing *Reed v. Commonwealth*, 6 Va. App. 65, 71 (1988)). A bona fide claim of right is "a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property. The claim need not be one of title or ownership, but it must rise to the level of authorization." *Reed*, 6 Va. App. at 71. Whether a Defendant has a claim of right generally would be a factual question. However, in the present case, Defendant did have a right under the ISA to remove or order Plaintiff to remove content under certain circumstances, if reasonable, and to require reasonable changes to the content. Thus, Defendant had a clear contractual right to use the method it employed to remove and delete the data. The contracts required reasonableness in determining what content could be deleted and, according to Plaintiff, did not allow for the removal of the specific content that was ultimately removed. Again, this is a question of a breach of contract rather than criminal trespass. The contract allowed Defendant access that might otherwise have been trespass. If the access involved actions that violated the contract, then Plaintiff can recover for breach of contract.

The Computer Trespass statute also provides that "nothing in this section

shall be construed to interfere with or prohibit terms or conditions in a contract or license related to computers, computer data, computer networks ... ." § 18.2-152.4(D). Defendant argues that this amendment makes clear that the legislature did not intend to interfere with contractual rights. Plaintiff insists that the trespass statute does not interfere with or prohibit the terms in the ISA or SCA. This paragraph was added to the statute in 1998, after Defendant's alleged actions, thus Plaintiff argues that even if this amendment protects Defendant from culpability for criminal trespass, it does not apply to this case because the amendment was passed after the alleged computer trespass. Plaintiff asserts that a statute may not interfere with an existing contract or right of action. Plaintiff argues that Subsection B of § 18.2-152.4 is a substantive provision and thus may only be applied prospectively.

A statute must be construed prospectively, "unless a contrary intent is manifest, but the legislature may, in its discretion, pass retrospective and curative laws provided they do not partake of the nature of what are technically called *ex post facto* laws, and do not impair the obligation of contracts, or disturb vested rights." *Collins v. Dept. of Alcoholic Bev. Control.*, 21 Va. App. 671, 678 (1996). In addition, these laws must be of the type that "the legislature might have passed in the first instance to act prospectively." *Id.* Substantive rights, like vested rights are protected from retroactive application. *Brushy Ridge Coal Co. v. Blevins*, 6 Va. App. 73, 79 (1988). Substantive rights create duties, rights and obligations, whereas remedial or procedural laws establish methods of obtaining redress or enforcement of substantive rights. *Board of Sup. v. FCS Building Assn.*, 254 Va. 464, 467 (1997).

While retroactive application of a substantive right violates due process, it does not, as Plaintiff asserts, create an *ex post facto* law in violation of the United States Constitution, Article I, § 10, or in violation of the Constitution of Virginia, Article I, § 9. The prohibition against *ex post facto* laws apply "to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). The U.S. Supreme Court has pronounced the two critical elements necessary for a criminal or penal law to be an *ex post facto* law: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). No new punitive measure may be applied to a crime that has already taken place. *Lindsey v. Washington*, 301 U.S. 397, 401 (1937). Thus, the amendment to § 18.2-152.4 would not be *ex post facto* because it in no way disadvantages the criminal defendant.

In this statute, it is true that the legislature does not explicitly allow retroactive application. However, the language of the amendment demonstrates that no right has been impeded or created.

As explained above, it appears that the intention of the statute was never to cover contractual situations like the one in this case. The legislature amended the statute to clarify what constitutes the crime of computer trespass. Even without this provision, the implication is that the statute does not apply to the present situation.

Further evidence that § 18.2-152.4(B) merely articulates the law that was in existence prior to this amendment, even though not previously articulated in the statute, is provided by the language of the amendment. The amendment states that "[n]othing in this section shall be construed to interfere with or prohibit terms or conditions in a contract ... ." Thus, no new right is being given and no right of action is being taken away. Rather, the legislature is clarifying the effect of the statute to avoid confusion.

A mere violation of a contract is not covered under § 18.2-152.4, Computer Trespass of the Computer Crimes Act. Plaintiff's Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment on Liability on Count IV is sustained. Count IV is dismissed.

### D. Counts VI and VII: Breach of Contract

The Court finds that there are factual issues in dispute. Therefore, Defendant's Motion for Summary Judgment on Counts VI and VII is overruled.

### III. Motion for Summary Judgment on Damages

### A. Lost Profits

The Virginia Supreme Court has announced the rule regarding lost profits:

When an established business, with an established earning capacity, is interrupted and there is no other practical way to estimate the damages thereby caused, evidence of the prior and subsequent record of the business has been held admissible to permit an intelligent and probable estimate of damages.

R. K. Chevrolet, Inc. v. Hayden, 253 Va. 50 (1997). "In Virginia, loss of future profits proximately caused by wrongful conduct, which results in the interruption or destruction of an established business, may be recovered from a tortfeasor, provided the lost profits are capable of reasonable ascertainment

and are not uncertain, speculative, or remote. *Hop-In Food Stores v. Serv-N-Save, Inc.*, 247 Va. 187 (1994); see *United Constr. Wkrs. v. Laburnum*, 194 Va. 872, 887 (1953) (finding that lost profits must be established with "reasonable certainty" and may not be remote, speculative, contingent or uncertain). Lost prospective profits due to a breach of contract may be recovered if proven with a reasonable degree of certainty, "but it is equally well settled that prospective profits are not recoverable in any case if it is uncertain that there would have been any profits, or if the alleged profits are so contingent, conjectural, or speculative that the amount thereof cannot be proved with a reasonable degree of certainty." *Sinclair v. Hamilton & Dotson*, 164 Va. 203, 211 (1935) (citations omitted).

The court distinguished between situations where the business was established as opposed to new. Where a breach of contract causes interference with or prevention of a business that is "a new or unestablished nonindustrial business, or one merely in contemplation, the anticipated profits from such business cannot be recovered, for the reason that it cannot be rendered certain that there would have been any profits at all from the conduct of such business." *Id.* In *Shopping Plazas v. Olive*, 202 Va. 862, 869 (1961), the court held that evidence of anticipated profits of a new business should not have been considered by the jury. The Court affirmed this ruling in *Goldstein v. Kaestner*, 243 Va. 169 (1992), and explained that damages could not be awarded based on evidence of projected profits from the operation of a gasoline station which never opened.

In *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681 (1989), the Fourth Circuit acknowledged that lost profits for a new business were not recoverable. The court explained, however, that since the business had been in operation as a bank at the time of the injury (and for six months prior to the injury), lost profits could be recovered. Virginia case law appears to encompass within the definition of "new" businesses not only businesses that have not yet begun operation. *Coastland Corp. v. Third Nat. Mtg. Co.*, 611 F.2d 969 (1979) (emphasis added) (distinguishing between an established business and one that was a "new business, venture, or enterprise, or one merely in contemplation"); *Sinclair v. Hamilton & Dotson*, 164 Va. 203 (1935) (emphasis added) (holding that the "prospective profits of a new nonindustrial business or one merely in contemplation are too uncertain and speculative to form a basis for recovery"). Many of the Virginia cases involved businesses that were not yet in operation. Yet, based on the language of the cases, the rule appears to encompass businesses that have recently started as well as ones that had not begun to operate. In *Whitehead v. Cape Henry Syndicate*, 111 Va. 193, 197 (1910), the plaintiff's business had

been in operation for one month but the court considered this a new business because it had not been in business long enough and had no such trade to show with reasonable certainty what, if any, profits would have been made. The court stated that this new business's profits "depended not only upon future bargains and states of the market, but upon other contingencies ..." The Court defined an established business as one that "had been successfully conducted for such a length of time and had such a trade established that the profits thereof are reasonably ascertainable." In contrast "where a new business or enterprise is floated and damages by way of profit are claims for its interruption or prevention," damages will be denied. *Id.* Thus, the mere existence of a business does not imply that it is established.

Defendant AOL cites *Coastland Corp. v. Third Nat. Mtg. Co.*, 611 F. 2d 969 (1979), as support for the assertion that future profits may not be recovered even though the parties made profit "projections." In that case, the court rejected Coastland's argument that because appellant received documentation with potential profits, and was thus aware of such profits, damages should have included those potential profits. *Id.* The court explained that "when an established business, with an established earning capacity, is interrupted and there is no other practical way to estimate the damages thereby caused, evidence of the prior and subsequent record of the business has been held admissible to permit an intelligent and probable estimate of damages." In contrast, new ventures are too speculative and depend upon "future bargains, the status of the market, and too many other contingencies to furnish a safeguard in fixing the measure of damages." *Id.*

Assuming that Plaintiff was an established business, evidence of future damages would be too speculative to be considered. "When an established business is interrupted and sustains loss, evidence of its past profits, and estimates of future profits derived therefrom, are admissible to permit an estimate of damages. *Murray v. Hadid*, 238 Va. 722, 732 (1989) (emphasis added) (citing *Krikorian v. Dailey*, 171 Va. 16, 30, 197 S.E. 442, 448 (1938)). In addition perspective profits are not recoverable in any case if it is uncertain that there would have been any profits ... . *Id.* In the present case, Plaintiff had no past profits to derive future profits since it had not been profitable during its brief existence.

Plaintiff bases its claim for future lost profits solely on the "stipulation" or business plan between AOL and CigarCafe. According to CigarCafe this business plan consisted of a detailed analysis of Plaintiff's business plan prior to the contract's formation, "with AOL's MBAs sending CigarCafe's MBA back to the drawing board repeatedly to massage the numbers, result[ing] in a profit projection that AOL blessed and to which AOL stipulated." See

CigarCafe's Memorandum of Points and Authorities in Opposition to AOL's Motion for Summary Judgment on Damages, p. 3(b)(1). Plaintiff argues that this stipulation overcomes the speculative nature of future profits for a new business. Plaintiff insists that the prospective profits were not speculative because they were in contemplation of the parties and because certain AOL employees anticipated these profits. In *ADC Fairways Corp. v. Johnmark Const. Inc.*, 231 Va. 312 (1986), the court held that plaintiff should not have been awarded lost profits because they were "completely speculative." Plaintiff calculated lost profits based on a certain percentage of his bid multiplied by the number of units that were to be completed for the project. The percentage was not included in the contract. CigarCafe suggests that the Court held this way because the percentage amount was arbitrary. However, the Court focused on the inability to determine what the future profits would be. It explained that this profit projection was nothing more than the profit plaintiff "hoped to make at the time of the bid. There was no evidence to establish that this is the profit that would have been made had Johnmark completed the project." *Id.* at 318.

In the present case, even though the business was in operation when the alleged breach of contract occurred, it did not fit the definition of "established" since it had not been in business for a long enough time to gauge its profits and, in fact, had not experienced any profits. Furthermore, plaintiff conceded in its CigarCafe's Memorandum of Points and Authorities in Opposition to AOL's Motion for Summary Judgment on Damages and in oral argument that the new business rule ordinarily would preclude a start-up company such as CigarCafe from recovering lost profits. Finally, even if the business was an established one, the damages must be capable of reasonable ascertainment and may not be uncertain, speculative, or remote.

Even assuming CigarCafe was an established business, a plan of projected profits developed by AOL and CigarCafe would be too speculative to use as evidence, considering CigarCafe's brief existence, its lack of any profits, its failure to assert any method for determining these damages and to provide expert witnesses.

Finally, future profits as estimated in the projections by Defendant, were not guaranteed in the contract. The parties did not somehow agree or stipulate that these profits were guaranteed. These projected profits were merely a hope or expectation of profits. Defendant's Motion for Summary Judgment on Damages as to lost profits is sustained.

## B. *Humiliation or Embarrassment Damages*

Plaintiff has alleged that Defendant insists in its Motion for Summary

Judgment that a limited liability company has no emotions and cannot be humiliated. In addition, Defendant argues that the alleged $1,000,000 Plaintiff has claimed it is owed for humiliation damages cannot satisfy the "reasonable certainty" standard.

"Humiliation" or "embarrassment" damages tend to arise in Virginia in defamation cases and infliction of emotional distress cases. In the infliction of emotional distress cases, the discussions often revolve around the need for or exception to the need for physical harm. Obviously, a corporation or other nonliving entity cannot suffer physical harm, and thus it appears that such "persons" are outside the scope of those intended to be protected.

Plaintiff relies on *Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 353-354 (1998), for its assertion that it is entitled to humiliation and embarrassment damages for destruction of a business and computer trespass. In *Sea-Land*, the Court cited D. Dobbs, *Handbook on the Law of Remedies*, § 12.25 (1973), for the theory that " 'absent some tort,' damages for 'humiliation or injury to feelings' are not recoverable in an action for breach of contract." *Id.* at 353-54 (citing D. Dobbs, § 12.25, at 927). The rule in tort cases is "absent proof of physical injury or wanton conduct, there can be no recovery of damages for mental anguish, emotional distress, or humiliation." *Id.* The court explained that it has made exceptions to the need for a physical injury in at least five cases of intentional torts and "approved recovery for humiliation, embarrassment, and *similar harm to feelings*, although unaccompanied by actual physical injury, where a cause of action *existed independently* of such harm." *Id.* (emphasis added); See *Fairfax Hospital v. Curtis*, 254 Va. 437 (1997). The Court explained that in this case and each of the five cases it cited, "harm to the feelings of the prospective victim was readily foreseeable." *Id.* Where conduct was merely negligent and there is no physical injury, a plaintiff cannot recover for emotional injury alone. *Womack v. Eldridge*, 210 S.E.2d 338, 340 (1974). If there is physical injury, a plaintiff must prove by clear and convincing evidence that the negligence caused the emotional disturbance and physical injury. *Id.* Because "humiliation" and "embarrassment," as envisioned by the Court, are feelings and involve an analysis of physical harm, a nonhuman entity may not recover such damages.

First, in the present case, the computer trespass and destruction of business claims, the only two counts for which humiliation damages have been claimed, are dismissed. Second, the issue is not whether those two torts allow recovery for humiliation type damages, but whether Plaintiff, as a nonhuman entity, a corporation, can recover for such damages. The Court finds that a corporation may not recover damages for humiliation or embarrassment.

Defendant's Motion for Summary Judgment on Damages as to humiliation and embarrassment damages is sustained.

### C. *Compensatory Damages*

Defendant's Motion for Summary Judgment on Compensatory Damages is overruled. As there are disputed facts, the issue of consequential damages should be left to the trial Judge.

### D. *Punitive Damages*

Plaintiff's Motion for Summary Judgment on Punitive Damages is overruled, as Counts I and II of the Motion for Judgment remain viable causes of action.